In re the MARRIAGE OF Virginia Angelita Gregori FREDERICI and Cecil Carleton Frederici.

Upon the Petition of Virginia Angelita Gregori Frederici, Appellee,

and concerning Cecil Carleton Frederici, Appellant.

No. 68656.

Supreme Court of Iowa.

Sept. 21, 1983.

Rehearing Denied Oct. 13, 1983.

Dennis D. Jerde and Patricia A. Shoff of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellant.

Henry A. Harmon and Patrick J. McNulty of Grefe & Sidney, Des Moines, for appellee.

Considered by REYNOLDSON, C.J., and HARRIS, McCORMICK, SCHULTZ and CARTER, JJ.

McCORMICK, Justice.

The question here concerns the effect on custodial rights of an out-of-state move by a mother with physical care of her children under a joint custody decree. In this case the trial court modified the father's visitation rights but refused to award him physical care. Upon appeal, the court of appeals reversed the trial court, terminated joint custody and awarded sole custody of the children to the father. Upon further review, we vacate the decision of the court of appeals and affirm the trial court.

Petitioner Virginia Angelita Gregori Frederici and respondent Cecil Carleton Frederici (Carl) were awarded joint custody of their two children in a 1979 decree dissolving their marriage after a trial. The children are a daughter, age 13, and a son, age 12. The parties lived in Des Moines at the time of the decree, and Virginia was awarded physical care of the children subject to reasonable visitation rights of Carl. A minimum visitation schedule was set out in the decree.

Virginia obtained a full-time job as communications director for the Iowa Department of Social Services a few months before the divorce. Carl is a Des Moines lawyer who practiced previously in New York City and Sioux City. After the divorce, Virginia resided with the children in the family home, and Carl purchased a three bedroom home a few blocks away. Virginia and Ronald Ostendorf were married in August 1980 and continued to live in the family home. With Virginia's encouragement and cooperation, Carl exercised liberal visitation. He saw the children an average of every other day, and they stayed overnight with him almost one-third of the time. The homes were in the same school district.

The present controversy arose when Virginia accepted a new job in Littleton, Colorado, a suburb of Denver, in February 1982. The new position would enable her to work in the specialized field of teleconferencing with a beginning salary of $36,000 a year and the possibility of earning $55,000 a year within 18 months. Her salary with the state was approximately $25,000 a year.

Because Virginia planned to move to the Denver area with the children, she filed an application to modify the dissolution decree to adjust the minimum visitation schedule to allow for the geographical separation of the children from Carl. Carl filed a counterclaim requesting that the decree be modified to transfer physical care of the children to him. After trial, the trial court modified the visitation schedule but denied the counterclaim. When Carl appealed, the court of appeals reversed, holding that Virginia had the burden to prove the move from Iowa was in the children's best interests, that she failed to meet the burden, that the move made joint custody unworkable, and therefore that Carl should have sole custody of the children, subject to visitation by Virginia and possible child support from her. We subsequently granted Virginia's application for further review.

The problem in this case involves three aspects of the custody award: joint custody, physical care, and visitation. The decree awarded the parties joint custody, gave Virginia physical care, and assured Carl liberal visitation rights.

■■■ To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being. The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons. *In re Marriage of Mikelson,* 299 N.W.2d 670, 671 (Iowa 1980).

In this case Virginia asked for a change in the visitation schedule, and Carl asked for a change in the physical care award. Neither party asked for termination of joint custody. In these circumstances Virginia had the burden of proof on the visitation issue and, although he contends otherwise, Carl had the burden of proof on the physical care issue.

The court of appeals appears to have terminated joint custody on its own motion. We hold that when a court considers changing a decree in a case before it in a respect that has not been litigated, it should provide the parties an opportunity to be heard on the possible change. If neither party desires the change, the court may nevertheless order it if the need for the change has been established by the usual standard of proof. The record does not show the parties had notice or had acquiesced in the proposed change in this case. Because we find the change should not have been made in any event, we do not address the consequences of making the change without the parties having had notice or an opportunity to be heard.

Carl does not challenge the need for modification of his visitation rights if his request for change in physical care is denied. Thus the fighting issue in the case is whether physical care of the children should be shifted from Virginia to him because of her move to Colorado.

In contending he should not have the burden of proof on this issue, Carl contends his rights as joint custodian would be adversely affected by Virginia's removal of the children. He argues that she should therefore have the burden to prove the move is in the children's best interests. He also argues that because she failed to meet her burden she cannot remove the children and their physical care should be transferred to him.

This court has recognized that when a decree is silent regarding removal of children from the state, an order restraining removal modifies the decree. *See In re Marriage of Lower,* 269 N.W.2d 822, 826 (Iowa 1978). Because the record shows that the dissolution trial court actually refused to place a restraint on removal in the decree in the present case, the decree is not merely silent on the issue. Pursuant to the usual modification standard, the burden is on the party resisting removal to demonstrate that the move will detrimentally affect the children's best interests. *Id.*

Carl asserts this case differs from *Lower* because the children are in joint custody rather than in the mother's sole custody as in *Lower.* He also relies on the record showing his extensive exercise of visitation. We agree these facts are relevant in considering whether the decree should be modified, but they do not change the usual modification test, and they are not determinative in this case.

The governing statute defines and distinguishes between joint custody and physical care. Joint custody gives the parents equal legal rights and responsibilities over the children. Iowa Code § 598.1(4) (1983). It is distinguished from physical care, which is the right and responsibility to maintain the principal home and to provide routine care for the children. § 598.1(5). We discussed these concepts in *In re Marriage of Bolin,* 336 N.W.2d 441, 443 (Iowa 1983). Although the concepts present different issues, they are obviously related.

A decision by a joint custodial parent with physical care of children to move out-of-state is obviously the kind of decision the other joint custodian has a right to be consulted about. Geographical proximity is a desirable feature of joint custody because it enhances the opportunity for access between the children and the parent who does not maintain their primary residence. Nevertheless, geographical proximity is not an indispensable component of joint custody, and, at least when the decree is silent on the issue, the parent having physical care of the children must, as between the parties, have the final say concerning where their home will be. This authority is implicit in the right and responsibility to provide the principal home for the children. The right would mean little if the other custodian

could veto its exercise. Even with joint custody, therefore, the burden is on the parent challenging removal to establish that the decree should be modified to preclude it.

In determining whether removal should be prevented, the trial court must consider all of the surrounding circumstances. They include the reason for removal, location, distance, comparative advantages and disadvantages of the new environment, impact on the children, and impact on the joint custodial and access rights of the other parent.

Our de novo review of the record shows two parents who have provided a textbook example of cooperation in a joint custody situation. Virginia has furnished the primary residence for the children and has had the responsibility for their routine care. Carl has exercised liberal visitation, has participated actively in the children's activities, and has taken them on vacations. Each parent has supported the other's relationship with the children. Neither parent indicates any problem with the other until Virginia decided to move to Colorado. Carl contends the move will disrupt the children's lives because it will limit their access to their father "and the only peer group, neighborhood, school and support system they have ever known."

It is obvious that moving to a city approximately 700 miles from Des Moines will be disruptive and require adjustment by the children. It is also obvious the move will limit the children's access to their father. These are negative factors that inhere in any long-distance move by a custodial parent. On the plus side, Littleton appears to be a nice city, and the Denver metropolitan area offers advantages comparable to those in the Des Moines area. With improvement in her income, Virginia should be able to provide the children with the same material advantages they had in Des Moines. Moreover, the expense of travel and communications should not be a serious financial burden on these parents. Of course, the move will also allow the children to maintain their close relationship with their mother.

There is no hint in this record that Virginia's move is motivated by a desire to defeat Carl's visitation rights or undermine his relationship with the children. *Cf. In re Marriage of Ciganovich,* 61 Cal.App.3d 289, 294, 132 Cal.Rptr. 261, 264 (1976) (one parent's sabotage of the other's visitation rights provides a ground to be considered in ruling on a motion to modify custody award); *D'Onofrio v. D'Onofrio,* 144 N.J. Super. 200, 206–07, 365 A.2d 27, 30 (Ch.Div. 1976), *aff'd.,* 144 N.J.Super. 352, 365 A.2d 716 (App.Div.1976) (integrity of motives of custodial parent in removal and non-custodial parent in resisting removal are relevant factors in determining whether it should be permitted). Virginia has a unique and promising career opportunity of the kind that typically motivates people in this highly mobile society to relocate.

No move is easy, even for adults. Some emotional trauma can be expected whenever children are removed from familiar to unfamiliar surroundings. But just as this factor does not prevent parents from moving generally, it is not alone sufficient to justify shifting physical care to the non-moving joint custodian. Virginia provided these children with routine day-to-day care from birth. While Carl was earning a living for the family she concentrated on homemaking. When the dissolution action was tried, Carl agreed the children would be better off in their mother's day-to-day care than his. These children are normal, well-adjusted and emotionally healthy. No evidence was adduced to show they could not make the necessary adjustments required by moving. Carl's evidence merely confirms that the children could be spared the trauma of moving if they stayed with him.

A finding that either parent is a suitable legal custodian is an essential predicate to an award of joint custody. Similarly, a finding that one of the parents can minister more effectively to the routine daily needs of the children is an essential predicate to an award of physical care. The

significance of an award of physical care should not be minimized. Children are immediately, directly, and deeply affected by the kind and quality of home that is made for them. Courts should not interfere with that status any more readily than with other aspects of the children's legal status.

Impressive evidence was received in this case to show Carl has had extensive contact with the children since the decree and has maintained a close relationship with them. This evidence, however, even when combined with evidence of emotional trauma to the children associated with removal, falls short of demonstrating the Colorado move is a material and substantial change of circumstances making it expedient in the children's best interests to shift their physical care to him. The evidence does not show that Virginia will be less able to minister to the children's well-being in the new environment or that the move will be detrimental to their long range best interests.

The legal standard applied in this case differs from the New York standard in *Weiss v. Weiss,* 76 A.D.2d 863, 428 N.Y.S.2d 506 (1980), *aff'd,* 52 N.Y.2d 170, 436 N.Y. S.2d 862, 418 N.E.2d 377 (1981) and other New York cases relied on by Carl. It also varies from the approach used in Michigan in *Scott v. Scott,* 124 Mich.App. 448, 335 N.W.2d 68 (1983). We believe, however, it comports with this court's holding in *Lower* and the modification standard in section 598.21(8). We find that Carl did not meet his burden to show the decree should be modified to give him physical care of the children.

Although the necessity for modifying the visitation provisions of the decree is undisputed, Carl contends the minimum visitation schedule should be expanded. The trial court specified visitation for him during six weeks in the summer, one week during Christmas vacation and three days during spring vacation. Just as with the original decree, however, this is merely a minimum schedule. The parties have shown they can agree on more extensive visitation, and we have no reason to doubt they will continue to do so.

We have considered all of the arguments of the parties but have addressed only those of material significance to our decision. We conclude that the trial court did not err in sustaining Virginia's application to modify and in denying Carl's counterclaim.

DECISION OF COURT OF APPEALS VACATED; AFFIRMED.

All Justices concur except CARTER, J., who concurs in the result.