# IN THE COURT OF APPEALS OF IOWA

No. 12-2204
Filed July 16, 2014

**DONNO SHANE ZEKUCIA,**
Plaintiff-Appellant,

**vs.**

**MARIA ISABEL JOHNSON n/k/a**
**MARIA ISABEL PETERSON,**
Defendant-Appellee/Cross-Appellant.

_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson,

Judge.

This appeal and cross-appeal raise challenges to a district court's ruling

concerning custody of a child. **AFFIRMED ON BOTH APPEALS.**

James H. Waters, Ankeny, for appellant.

Cathleen J. Siebrecht of Siebrecht Law Firm, Des Moines, for appellee.

Heard by Vaitheswaran, P.J., and Tabor and Bower, JJ.

**VAITHESWARAN, P.J.**

This appeal and cross-appeal raise challenges to a district court's ruling concerning custody of a child.

### I.    *Background Facts and Proceedings*

Donno Shane Zekucia and Maria Isabel Johnson are the unmarried parents of a child, born in 2007.  The parents had an acrimonious relationship from the start.

A few weeks after the child's birth, Shane filed a paternity action, requesting physical care of the child.  Following a hearing, the district court granted Maria physical care, subject to reasonable visitation with Shane.

When the child was three, Maria applied to modify the paternity decree. She alleged "material and substantial changes in circumstances not contemplated by th[e] [c]ourt at the time the [d]ecree was entered" that justified a change to "sole legal custody"[1] with her, subject to supervised visitation with Shane.  Shane countered with his own application for modification, which sought "sole legal and physical custody" of the child.  At a hearing on the applications, he withdrew his request for sole legal custody and only sought a change in the physical care arrangement.

The district court denied both applications after concluding neither parent proved a substantial change of circumstances to warrant modification of the decree.  The court found,

> the current state of affairs is precisely what this court perceived when the decree was entered—two people who are each, in their own ways, loving, attentive, and capable parents but also two

---

[1] Maria also sought physical care of the child.

people who cannot get past their animosity for and/or distrust of one another in order to coparent a child who deserves and is entitled to their cooperative efforts.

The court "tweak[ed]" the visitation provisions of the paternity decree, citing the "much lower standard of proof" to support this type of change and a desire "to encourage the parties to do what they so far have been unable to do." Specifically, the court ordered all visitation exchanges to take place at the child's daycare or school or at a police department and ordered no video or audio recording at visitation exchanges.

Shane appealed and Maria cross-appealed.

## II. Analysis

### A. Physical Care/Sole Custody

We begin with the well-established standards for modification of a custody decree:

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). On our de novo review, we agree with the district court that neither parent met these standards.

As noted, there was no love lost between the parents. The district court detailed their rancorous relationship in its original decree, pointing out that, aside from Shane's paternity, the parties "agree[d] on little else" regarding the child, including the child's name.

Not much changed in the intervening years. Shane continued to refer to the child by the name he chose for him, despite the district court's unequivocal declaration that the child's legal name was the one selected by Maria. He issued a "press release" disparaging the court's original decree, began recording visitation exchanges purportedly to protect himself against Maria's false allegations, involved Maria's employer in the custody dispute by approving his attorney's mailing of a deposition transcript to Maria's supervisor, and filed an ethical complaint against one of the therapists involved in the case.

Maria, in turn, leveled serious and ultimately unsubstantiated allegations of sex abuse against Shane. While her allegations found support in statements the child made to his therapist, the Department of Human Services investigated the statements and concluded they were "unconfirmed." Additionally, at the modification hearing, the therapist opined that the child was not sexually abused and might have been inadvertently influenced to make the disclosures.[2]

A child custody evaluator appointed by the district court summarized the parental relationship as follows:

> Since the final decree in 2007 Shane and Maria have been unable to forge any kind of workable co-parenting arrangement. Their situation has grown from a "snowball" effect to an "avalanche" that is spiraling out of control. It must be stopped before [the child] is permanently damaged beyond the point of therapeutic repair.

The evaluator's assessment mirrors the original court's assessment that the parents "have not been capable of reaching joint decisions affecting the welfare of the child in virtually any respect, and have been unable to communicate

---

[2] Shane also asserted that Maria obstructed visitation. He supported his assertion with a recording of a visitation exchange. Contrary to his assertion, the recording reveals a smooth exchange, with none of the "drama" Shane discussed in his testimony.

effectively." Because the hostile and dysfunctional relationship between the parents was present at the time of the original decree and undergirded both parents' modification applications, we conclude both parents failed to establish a material and substantial change of circumstances warranting modification of the custodial or physical provisions of the decree. Accordingly, we affirm the district court's denial of the custody modification applications.

B.      *Supervised Visitation*

Maria contends the district court should have required Shane's visitation to be supervised. We disagree.

The court noted that the sex abuse allegations were unconfirmed, rendering supervised visitation untenable. Nonetheless, the court recognized the importance of implementing alternate methods of safeguarding the child. To that end, the court required ongoing child counseling sessions with the therapist who initially sought investigation of the child's sex abuse allegations. The court's order for continuing therapy had the added benefit of advancing the department's recommendation for child "discovery therapy," a type of therapy the therapist testified he was capable of providing. While the therapist was inexplicably not asked to pursue this therapy after the department issued its report, he was the obvious choice to provide it because the child trusted him and had developed a positive therapeutic relationship during seventeen sessions.

We conclude the district court did everything possible short of supervised visitation to protect the child's interests. Accordingly, we affirm the court's modification of the decree as it relates to visitation exchanges and child therapy and affirm the court's denial of Maria's supervised visitation request.

*C.     Attorney Fees*

Maria contends the district court abused its discretion in refusing to require Shane to pay her trial attorney fees.   She cites the disparity in the parties' incomes.

In light of the district court's findings that "[b]oth parties have admittedly not followed the decree to the letter" and both parties were jointly responsible "for the current unworkable situation," we discern no abuse of discretion in the court's ruling.   *See In re Marriage of Scheppele*, 525 N.W.2d 678, 680 (Iowa 1994) (setting forth standard of review).   For the same reasons, we decline to award appellate attorney fees.   *Id.*   Costs are taxed equally to both parents.

**AFFIRMED ON BOTH APPEALS.**