# IN THE COURT OF APPEALS OF IOWA

No. 13-1773
Filed August 13, 2014

IN RE THE MARRIAGE OF BRIAN MARK ALLEN
AND KANDICE MARIE ALLEN

Upon the Petition of
BRIAN MARK ALLEN,
          Petitioner-Appellee,

And Concerning
KANDICE MARIE ALLEN,
          Respondent-Appellant.

_____

          Appeal from the Iowa District Court for Black Hawk County, Andrea J.

Dryer, Judge.


          A mother appeals the district court's modification of the dissolution decree.

**AFFIRMED.**


          Luke D. Guthrie of Roberts, Stevens, Prendergast & Guthrie, P.L.L.C.,

Waterloo, for appellant.

          Andrew C. Abbott of Abbott Law Office, P.C., Waterloo, for appellee.


          Considered by Vaitheswaran, P.J., and Doyle and McDonald, JJ.

**VAITHESWARAN, P.J.**

Kandice Allen appeals a modification decree granting her ex-spouse physical care of their child.

## I. Background Facts and Proceedings

Brian and Kandice Allen married in 2005, had one child, and divorced in 2008.  The parents stipulated to joint physical care of the child and the district court approved the agreement.  The stipulation provided that the child would be with Brian half the week and Kandice the other half of the week.

After the decree was entered, Brian's work hours changed.  The parents informally altered the stipulated schedule to accommodate his new hours.

During the marriage, the parents lived in Cedar Falls.  In 2013, Brian remarried and moved to his new wife's home in a town eighty miles away.  The same year, he filed a petition to modify the physical care provision of the dissolution decree.  Following a hearing, the district court granted Brian's request for physical care of the child.  Kandice appealed.

## II. Analysis

Our standards for modifying the physical care provisions of a decree are well-established:

> [T]he applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.  The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the children.  A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.

*In re Marriage of Frederici,* 338 N.W.2d 156, 158 (Iowa 1983).

The district court determined Brian's move constituted a permanent, material and substantial change of circumstances not contemplated by the parties when the dissolution decree was entered. Neither parent takes issue with this determination. *Cf.* Iowa Code § 598.21D (2013) (stating court may consider move of 150 miles or more a substantial change in circumstances). Kandice focuses on the second prong: whether Brian can minister more effectively to the child. *See Frederici*, 338 N.W.2d at 158. She contends (1) the district court "minimized or downplayed significantly the detrimental consequences on [the child's] educational stability and continuity in awarding primary physical placement to Brian," and, (2) because she is "living in Cedar Falls, [she] can best minister to the immediate long-term best interests of [the child]." Both arguments implicate the child's educational needs. We will address them together, reviewing the record de novo.

The child had completed kindergarten and first grade by the time of the modification hearing. As the district court found, he struggled in school. The child's kindergarten teacher testified she had concerns with his academic progress and recommended retaining him in kindergarten the following year so he could develop the foundational skills to progress. Kandice opposed this recommendation and the child proceeded to first grade.

The child's first grade teacher testified the child did not read at grade level and had difficulty with writing and math. She also noted that the child's progress was impeded by poor attendance: thirty missed days and seventeen tardy days

in first grade. She stated it was "important for children to be at school any day that they [ ] possibly" could to "absorb [ ] some of the information."

According to Brian, he was only responsible for six of the thirty absences, with four of them being for doctor appointments. Kandice did not dispute this testimony. That left the vast majority of missed or late days attributable to Kandice, who acknowledged difficulties in getting the child "up and [] moving" and stated she kept the child home if he was "extremely congested."

Kandice did not recognize the import of her actions. She made light of two truancy notices issued by the school, informing Brian they were "randomly generated letters" that went "out to all [ ] parents."

We recognize Kandice was proactive in addressing the child's mental health needs; she initiated play therapy to address his aggressive behaviors on the playground and facilitated an evaluation for learning disabilities and the formulation of an individualized education plan (IEP). But these commendable measures did not change the fact that she was unable to ensure the child's regular attendance at school.

Brian, in contrast, was willing and able to get the child to school in Cedar Falls, notwithstanding the eighty-mile commute. And, he was as committed to play therapy and the IEP as Kandice. The primary concern with his assumption of physical care was the change in school districts this would require.

The concern was not without justification. The child's play therapist testified that the child might have difficulty adjusting to a different location. A school counselor seconded this opinion, stating the child required structure. And

Kandice suggested the IEP they had worked so hard to formulate might not be fully implemented in a different school system.

These very real concerns were mitigated by several circumstances. First, the child would have been required to adjust to a new classroom and teacher had he remained in Cedar Falls. Second, as the district court astutely observed, the joint physical care arrangement required the child to make significant weekly transitions from one home to another. Those transitions would be minimized with the new arrangement. Finally, as the child's play therapist noted, the IEP was legally required to follow the child to a different school. This meant that, even though the plan was formulated while the child was in the Cedar Falls school district, the child would have the benefit of the same plan in his new school district. Significantly, Brian's new wife had experience navigating special needs issues with this school district, having done so with one of her older children.

We conclude Brian could more effectively minister to the child's educational needs. This consideration supported the district court's decision to modify the decree to grant Brian physical care of the child.

We find it unnecessary to discuss the remaining considerations cited by the district court in support of the modification decision. Suffice it to say that the court found Brian to be the more stable parent in several other respects and the court's finding is supported by the record.

### III. Attorney Fees

Brian seeks an award of appellate attorney fees. An award is discretionary. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App.

2007).  Because Brian is employed and Kandice was unemployed at the time of the modification hearing, we deny his request to have Kandice pay his fees.

**AFFIRMED.**