**IN THE COURT OF APPEALS OF IOWA**

No. 16-0942
Filed January 25, 2017

IN RE THE MARRIAGE OF DEAN ALAN RITCHISON
AND WENDY JO RITCHISON

Upon the Petition of
**DEAN ALAN RITCHISON,**
        Petitioner-Appellee,

**And Concerning**
**WENDY JO RITCHISON, n/k/a WENDY JO JENSEN,**
        Respondent-Appellant.
_____

        Appeal from the Iowa District Court for Pottawattamie County, Gregory W.

Steensland, Judge.


        Former wife appeals from the district court's modification of the physical-

care provision of the parties' dissolution decree. **AFFIRMED.**


        Chad D. Primmer of Chad Douglas Primmer, P.C., Council Bluffs, for

appellant.

        Joseph J. Hrvol of Joseph J. Hrvol, P.C., Council Bluffs, for appellee.


        Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**MULLINS, Judge.**

Wendy Jensen appeals from the district court's ruling dismissing her application for contempt[1] and modifying the physical-care provision of the parties' dissolution decree. Wendy maintains the district court should have modified the award of joint physical care to place the children in her physical care rather than that of the children's father, Dean Ritchison. She claims the court relied too heavily on the children's testimony they would rather live with their father in reaching its conclusion.

## I. Background Facts and Proceedings

The parties were married in 1995. M.J.R. was born in March 1999 and M.M.R. was born in August 2001.[2] The parties' marriage was dissolved by decree in October 2007.

Pursuant to the decree, Dean and Wendy shared joint legal custody and joint physical care of the children. The decree set out that one parent would have the children from Wednesday through Saturday and every other Sunday, with the other parent having the children the rest of the time. By the summer of 2014,[3] the parties came to an informal agreement, whereby the children resided

---

[1] In her brief, the mother's only reference to the dismissal of the contempt action is the following: "[T]he Court did not find any violations from the original decree to have been done willfully or with contempt. This is a finding Wendy disagrees with." The appellant's "random mention of an issue, without analysis, argument or supporting authority is insufficient to prompt an appellate court's consideration." *State v. Mann*, 602 N.W.2d 785, 788 n.1 (Iowa 1999); *see also* Iowa R. App. P. 6.903(2)(g)(3) ("Failure to cite authority in support of an issue may be deemed waiver of that issue.").

[2] The parties have a third child who had reached the age of majority before the petition for modification was filed.

[3] There's a dispute over when the family began following the new schedule. According to Dean and the testimony of M.J.R., the schedule started before 2014—possibly in 2011 or earlier. The mother maintains the change in schedule did not take place until 2014 and she intended for it to last only one year.

with Dean Monday through Friday and then with Wendy every weekend for the duration of the school year. During the summer, the schedule switched so the girls lived with their mother during the week and with their father during the weekend. This arrangement seems to have worked until November 2015.

On November 10, 2015, Wendy filed an application for contempt, alleging Dean refused to return the children to her in willful violation of the dissolution decree. Three days later, Dean filed a resistance to the application to show cause and a petition to modify the decree. In the application, Dean maintained there had been a substantial change in circumstances warranting modification and it was in the children's best interests if he became their primary caregiver. Wendy filed an answer in which she agreed a substantial change in circumstances had occurred, but she claimed it was in the children's best interests to be placed in her physical care.

Both the application to show cause and the petition for modification came on for hearing on May 9, 2016. At the hearing, the court heard from M.J.R., who was seventeen at the time, and M.M.R., who was fourteen, in chambers, outside the presence of their parents. Each girl expressed she wanted to live with Dean during the week and with Wendy during the weekend. Both girls told the court they loved their mother, but they expressed it was a struggle to live with her at times. The court also heard from the therapist who met with M.J.R. and M.M.R. after the modification petition was filed and from both parents.

On May 23, 2016, the court dismissed Wendy's application for contempt, finding, "[T]he parties have never really followed [the divorce] Decree. This court does not find this conduct to be willful or contemptuous." Concerning the petition

for modification, the court found there was a material change in circumstances and Dean "is in the superior position to be the primary physical caretaker."

Wendy appeals.

**II. Analysis**

*A. Modification of Physical Care*

On appeal, Wendy does not challenge the district court's finding there was a substantial change in circumstances warranting modification. Rather, she claims the district court should have modified the decree to place the children in her care.

We review the modification of a physical-care provision de novo. *See In re Marriage of Thielges*, 623 N.W.2d 232, 235 (Iowa Ct. App. 2000). "A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well-being." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). "The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.*

In making the physical-care determination, we consider the preferences of the children, but they are not controlling. *See McKee v. Dicus*, 785 N.W.2d 733, 738 (Iowa Ct. App. 2010); *see also* Iowa Code § 598.41(3)(f) (2015). "In determining the weight to be given to a child's wishes, we consider the following factors: (1) the child's age and educational level, (2) the strength of the child's preference, (3) the child's relationship with family members, and (4) the reasons the child gives for [her] decision." *McKee*, 785 N.W.2d at 738. Their preference "is entitled to less weight in this modification than it would be given in the original

custody proceedings." *In re Marriage of Behm*, 416 N.W.2d 100, 102 (Iowa Ct. App. 1987).

Both the seventeen-year-old and the fourteen-year-old told the court they would rather live with their father during the week and with their mother on the weekends. Both daughters had been asking Wendy to see a therapist or counselor since before the proceedings began, but she refused to do so until Dean filed the petition for modification. Even then, it seems she and the girls met with the therapist only a few times and had since ceased going. Even that limited amount of therapy had fostered some improvement in the relationship between Wendy and M.J.R., but M.J.R. was "scared that things were going to go back downhill" because "[a]ll it takes is a bad fog that she gets into." M.M.R. told the court she had only had one therapy session with her mother and she did not "think it fixed anything." M.M.R. broke down while speaking to the court about her relationship with her mother; she stated, "Obviously, there are some personal problems with me and my mom." The district court explicitly found, "This statement was made by M.M.R. lovingly and not with any sense of condemnation whatsoever."

The therapist who met with Wendy and the girls after the modification was filed also testified about conflict or issues between Wendy and her daughters. According to the therapist, "Both girls were experiencing some problems with their mood and also some relationship problems with their mom related to some conflicts going on in the home and it sounded like between the mom and dad as well." When asked, the therapist agreed there were not any conflicts between the daughters and Dean. She later restated that part of her focus when she met

with the girls was to "mend the relationship between Wendy and her two daughters." Although the therapist originally testified she believed Dean was pitting the girls against Wendy, after further examination she testified that impression was based on "[s]ome things Wendy told" her, "some experiences that [she] had in similar situations," and "just kind of [her] gut." She clarified that nothing the girls said gave her that impression.

Wendy maintains the younger daughter's preference to live with Dean is motivated by her desire to continue participating in school activities that would have been limited if she lived in the mother's household. While we acknowledge the desire to continue her activities may have played some part in M.M.R.'s statement, we believe—and are more persuaded by—the daughters' candid statements about issues they were having with their mother. Additionally, Wendy testified she believed the daughters wanted to live at Dean's home because there was less supervision and rules than in her home. Before the mother testified as such, while M.J.R. was in chambers with the judge, one of the attorneys asked her a question about which parent was more of the disciplinarian of the family; M.J.R. stated, "My mom tends to take things out harder on us, but my dad expects a lot from us." The rules are likely different at Wendy's home and Dean's home, but it does not follow that Dean fails to supervise the children.

While the preferences of the minors at issue does not control our decision, we note both teenage children spoke candidly about the struggles they have been having while living in their mother's home; they also expressed that they love their mother and want to continue a relationship with her. Although Wendy believes the children want to live with their father because it gives them more

freedom, we believe their stated reasons. That being said, we agree with the district court that modification of the decree placing M.J.R. and M.M.R. in the physical care of Dean is in their best interests. This schedule has worked for this family in the past—albeit on an informal basis—and we believe it can be successful again.

### B. Appellate Attorney Fees

Wendy asks that we award her appellate attorney fees. Appellate attorney fees are not a matter of right, but rather rest in the appellate court's discretion. *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). We consider the needs of the party seeking an award, the ability of the other to pay, and the relative merits of the appeal. *Id.* Here, we determine both parties should be responsible to pay their own appellate attorney fees.

### III. Conclusion

Because there has been a substantial change in circumstances and Dean is in the superior position to care for the teenage daughters, we affirm the district court's modification of the physical-care provision of the decree. We decline to award Wendy appellate attorney fees.

**AFFIRMED.**