# IN THE COURT OF APPEALS OF IOWA

No. 21-1091
Filed March 30, 2022

**LINDSAY MOSES, n/k/a LINDSAY BURMAN,**
　　Plaintiff-Appellee,

**vs.**

**ZACHARY RAY ROSOL,**
　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Bremer County, Chris Foy, Judge.


　　　Zachary Rosol appeals from the order modifying a custodial decree.
**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**


　　　Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

　　　Shanna Chevalier and Lana L. Luhring of Laird & Luhring, Waverly, for appellee.


　　　Considered by Vaitheswaran, P.J., and Tabor and May, JJ.

**MAY, Judge.**

This case is about L.R., a young child. Zachary (Zach) Rosol and Lindsay Burman (formerly Lindsay Moses) are L.R.'s parents. The two never married. In 2018, the district court entered a decree providing them joint legal custody and joint physical care of L.R. Lindsay appealed from that decree, challenging the physical-care determination. This court affirmed. *See Moses v. Rosol*, No. 18-0791, 2019 WL 2145709, at *1 (Iowa Ct. App. May 15, 2019).

In February 2020, Lindsay initiated the instant action to modify physical care. Lindsay requested the court modify the physical-care arrangement to place physical care of L.R. with her. She claimed joint physical care was no longer practical because both parents moved farther apart, they both married other people, and the level of animosity between the parents had grown to a point wherein L.R. was negatively impacted. In addition, in her trial testimony, she "ask[ed] that the court allocate responsibility for scheduling and maintaining medical appointments."

Following a two-day trial, the district court modified the decree to place physical care with Lindsay. The court also modified the legal custody provision so that—although both parents remain joint legal custodians of L.R.—Lindsay has "the sole right and responsibility to make all significant decisions regarding the medical, dental, and mental health treatment and care that [L.R.] receives." Though the modified decree also requires Lindsay to "consult with and seek the input of [Zach] prior to engaging the services of any healthcare provider for L.R.," "the final decision in all such matters shall be hers," meaning Lindsay's.

Zach appeals the modification of physical care and legal custody. Our review is de novo. Iowa R. App. P. 6.907. Even so, "we afford deference to the district court for institutional and pragmatic reasons. This means we give weight to the district court's findings of fact." *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017) (citations omitted). "District courts are given reasonable discretion in determining whether to modify. That discretion will be disturbed only if there is a failure to do equity." *In re Marriage of Johnson*, No. 21-0647, 2022 WL 244514, at *2 (Iowa Ct. App. Jan. 27, 2022) (citation omitted).

We first address Zach's claim that the district court should not have modified physical care.[1] A parent seeking to change a physical-care arrangement faces a heavy burden. They must show (1) a material and substantial change in circumstances and (2) they can minister more effectively to the child's wellbeing. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

To satisfy the first step, Lindsay needed to show the material and substantial changes in circumstance were not contemplated by the court at the time the court entered the original decree, the changes are more or less permanent, and they relate to L.R.'s welfare. *See id.* She has done so. First of all, we note the parents live significantly farther apart now than they did at the time the decree was entered. Zach testified at the first trial that he planned to move

---

[1] When making a physical-care determination under Iowa Code chapter 600B (2020), we apply the factors set out in section 598.41(3), which governs custody and physical-care determinations in dissolution proceedings. Iowa Code § 600B.40(2). So we apply the same modification-of-physical-care standards in this proceeding as we would in a dissolution modification proceeding. *See Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002) (applying modification standards used in dissolution modification proceedings to a chapter 600B case).

closer to the town where Lindsay lived, keeping L.R. close to both parents. But since then, both parents have moved and—according to mapquest.com—it now takes forty-seven minutes to travel between their homes. There is no indication either parent intends to move closer to the other. We think the significant distance between the parents makes joint physical care impractical. *See, e.g.*, *See Teggatz v. Ellingson*, No. 19-1816, 2020 WL 2065944, at *2 (Iowa Ct. App. Apr. 29, 2020). And we worry it will be even less practical when L.R. enters elementary school and begins extracurricular activities.

Far more concerning, though, is the deterioration of the parents' co-parenting relationship. When this family was previously before this court, we anticipated that "as the [parents] move[d] on from the frustration of their failed relationship and focus on parenting L.R., their communication [would] improve." *Moses*, 2019 WL 2145709, at *5. But that is not how things have turned out. In truth, these parents have not been able to agree on the most basic issues relating to L.R. For example, they have resorted to communicating and negotiating through their attorneys on routine issues such as when to reschedule a speech therapy appointment for L.R., whether L.R. should participate in wrestling club, and reimbursement for bills relating to L.R. There was a confrontation between the two families on L.R.'s first day of preschool on the steps of the school.[2] And most

---

[2] The parents accounting of the incident differs—both camps attempt to shift blame on the other. But both agree when L.R. attempted to hold both parents' hands as he walked in for this first day of preschool, seemingly in effort to share the special moment with both parents, Zach stopped L.R. and told him "we're not going to do that" and walked L.R. into school without Lindsay.

shocking, L.R.—who was born in 2016—has yet to see a dentist because the parents could not agree on a provider.

So, contrary to Zach's beliefs, L.R. is not shielded from the parents' acrimony. In fact, these tiffs directly and negatively impact L.R., even preventing L.R. from receiving basic dental care. Given the current realities, it is clear that joint physical care no longer serves L.R.'s best interest. Lindsay has established a material and substantial change in circumstances warranting modification. So we move to our next step to consider whether the district court correctly determined Lindsay can provide superior care.

Because Zach and Lindsay had joint physical care of L.R. under the original decree, we start with the premise that both parents are suitable caregivers and begin on equal footing. *See Melchiori*, 644 N.W.2d at 369. And because Lindsay seeks to move L.R. out of joint physical care and into her physical care, she must prove a superior "ability to minister more effectively to [L.R.]'s well-being." *See Frederici*, 338 N.W.2d at 158.

After reviewing the record, we conclude Lindsay can better minister to L.R.'s well-being. Lindsay has been particularly attentive to L.R.'s medical needs. Of L.R.'s roughly 180 speech therapy appointments, Lindsay has missed just one appointment. She sits in on the appointments so she knows what to work on with L.R. at home. She has been a strong advocate for L.R. to get necessary adaptive equipment at preschool so he can better participate in the classroom. And she has modified her work schedule to work part time and from home so she has more

flexibility to care for L.R. throughout the year.[3]  And while neither parent is particularly supportive of the other's relationship with L.R., we think Lindsay is at least more supportive than Zach.  For example, Zach and his wife signed L.R. up for preschool without notifying Lindsay and did not include her name or information in the registration paperwork.  All in all, we think Lindsay is the better parent to have physical care of L.R.  So we do not disturb the district court's physical-care determination.

Next, we address Zach's claim that the district court should not have modified the legal custody provision of the decree.  On this point, we agree with Zach.  Lindsay's petition for modification made no mention of modifying legal custody.  Nor did her pretrial brief.  Indeed, in the proposed disposition she filed just before trial, Lindsay stated: "The parties agree that [L.R] shall be in the [sic] joint legal custody."  And while Lindsay noted in her testimony that she wanted "the court [to] allocate responsibility for scheduling and maintaining medical appointments," the court's modification order went far beyond that.  The modified decree specifically stated,

> The parties are awarded joint legal custody of L.R.  As used in this order, the term "joint legal custody" means that both parents have an equal voice in making significant decisions affecting the upbringing and welfare of their son, including but not limited to his education, discipline, social development, religious instruction, moral training, and other matters of similar importance.  *However, going forward Lindsay shall have the sole right and responsibility to make all significant decisions regarding the medical, dental, and mental health treatment and care that their son receives.*  Except in an emergency, Lindsay shall consult with and seek the input of Zachary prior to engaging the services of any healthcare provider for L.R., *but the final decision in all such matters shall be hers.*

---

[3] Zach works in the construction industry, so he works long hours during the warmer months and does not work in the wintertime.

(Emphasis added.)

We understand the district court's intent was to act in L.R.'s best interest. But our concern is that because Lindsay's petition only sought a change in physical care, legal custody was not properly before the court even by notice-pleading standards. *Cf. Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004) (recognizing under notice-pleading standard the petition must inform the defendant of the general nature of the claim alleged); *In re Marriage of Heifner*, No. 15-1285, 2016 WL 3556529, at *1 (Iowa Ct. App. June 29, 2016) ("Legal custody and physical care are distinct concepts in Iowa family law.").[4] So we vacate the modification of the legal custody provision and remand to the district court for entry of a corrected decree. If either parent chooses to seek modification of legal custody in the future, this opinion should not be construed in favor of or opposed to any possible future modification of legal custody.[5]

Both parents seek appellate attorney fees. Appellate attorney fees are awarded upon our discretion and are not a matter of right. *See* Iowa Code § 600B.26 ("In a proceeding to determine custody or visitation, or to modify a

---

[4] Lindsay does not argue that a change in legal custody was tried by consent.

[5] We do not consider whether it is permissible to maintain joint legal custody while giving one parent sole decision-making authority over medical care issues. *Compare Sloan v. Casey*, No. 15-0921, 2015 WL 9451093, at *7–8 (Iowa Ct. App. Dec. 23, 2015) (upholding modification of joint legal custody to make one parent solely responsible for scheduling medical appointments for child), *with Armstrong v. Curtis*, No. 20-0632, 2021 WL 210965, at *3 (Iowa Ct. App. Jan. 21, 2021) (noting our "statutes mention nothing about assigning sole decision-making authority for some responsibilities and joint participation for others"), *and In re Marriage of Milne*, No. 20-0228, 2020 WL 5230461, at *4 (Iowa Ct. App. Sept. 2, 2020) ("Chapter 598 appears to consider joint custody and sole custody as all-or-nothing propositions.").

paternity, custody, or visitation order under this chapter, the court may award the prevailing party reasonable attorney fees."). When considering whether to exercise our discretion, "we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal." *Hensch*, 902 N.W.2d at 827. Upon consideration of these factors, we decline to award either parent appellate attorney fees.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED.**