# IN THE COURT OF APPEALS OF IOWA

No. 23-0276
Filed December 20, 2023

**KEVIN E. SAITER, JR.,**
        Petitioner-Appellee,

**vs.**

**HOPE M. LUCE,**
        Respondent-Appellant.
_____

Appeal from the Iowa District Court for Clinton County, Tamra Roberts, Judge.

A respondent appeals from the district court's denial of a petition to modify the custodial and physical care provisions of an original order. **AFFIRMED.**

Eric D. Puryear and Eric S. Mail of Puryear Law P.C., Davenport, for appellant.

Jennifer M. Olsen of Olsen Law Firm, Davenport, for appellee.

Considered by Bower, C.J., and Schumacher and Langholz, JJ.

**SCHUMACHER, Judge.**

A parent appeals from the district court's January 2023 order which denied a request to modify both legal custody and physical care of the parties' child, arguing that a substantial and material change of circumstances since the original custody order warrants the requested relief.

### I. Background Facts and Prior Proceedings

R.S. was born in 2016. In 2018, her parents, who were never married, entered a stipulation for custody, visitation, and child support, which the district court adopted. The order provided for joint legal custody and shared physical care of R.S. In the absence of an agreement, the parties rotated the child every seven days. At the time of the entry of the order, the parties resided together. Sometime after the entry of the order, the parties established separate residences. The order was administratively modified the next year in 2019 regarding child support. In 2021, the mother petitioned to modify both legal custody and physical care. The mother's petition alleged as follows:

> 1. The [father] has abused and undermined the [mother] in front of the minor child on numerous occasions;
> 2. The [father] has failed to communicate with the [mother] properly as to changes in visitation and shared care schedules;
> 3. The [father] has failed to properly take care of the minor child when in his care.

At trial in November 2022, the mother testified that R.S. disclosed to both her mother and play therapist that when she was four years old and in her father's care, a friend, the same age as R.S., touched her inappropriately while the children were playing "doctor." The mother also raised concerns that R.S. may have committed sexual abuse of a young child and referred to the father's other child,

age ten, as a sexual abuser. The mother and play therapist described the incident between the four-year-olds as "sexual abuse." Because of reports by the mother and the play therapist, the Iowa Department of Health and Human Services (HHS) was twice involved. Both times the HHS reports were unconfirmed, and HHS determined R.S. was safe with both parents.

The mother also criticized the father's choice of babysitters, including the maternal grandmother,[1] who the mother testified was an alcoholic; what she viewed as the father's lack of attention to their daughter's health, specifically his response to the COVID-19 pandemic; and previous domestic abuse between the mother and father.

The court issued an order denying the mother's request for sole legal custody and physical care. The court highlighted both parents' immaturity and the mother's overreaction to certain events, noting both parents were "naïve for their respective ages." The court found that the mother was "highly emotional." The court also found regarding the mother, "She worries a lot and clearly has a high level of anxiety. She is very suspicious of sexual abuse between children."

As to the domestic abuse allegations, the court noted that no charges were filed after law enforcement was summoned to the parties' home and that the mother's testimony was inconsistent with law enforcement records. As to the medical concerns, the court determined that the parents' varying responses to the COVID-19 pandemic were temporary. Lastly, the court determined that there had

---

[1] The mother obtained a temporary injunction prohibiting the father from using the maternal grandmother as a babysitter for the child. Our record is unclear as to the status on this injunction.

been no change in the use of babysitters since the entry of the original order, and that the mother had used the challenged babysitters in the past.

Although the court modified the parenting schedule and the child support obligation, the mother does not raise either of these issues on appeal. Accordingly, we limit our discussion to legal custody and physical care issues.

## II. Standard of Review

Our review of child custody matters is de novo. *McKee v. Dicus*, 785 N.W.2d 733, 736 (Iowa Ct. App. 2010). At the same time, "we give weight to the factual findings of the district court, especially when considering the credibility of witnesses." *Id.* Although, we are not bound by these findings. *Id.* And "[o]ur overriding consideration is the best interests of the child." *Id.*

## III. Analysis

"Courts are empowered to modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child." *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). The party seeking modification of a decree's custody provisions must also prove a superior ability to minister to the needs of the children. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). "The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Id.*

The court did not find the sexual abuse allegations warranted a change in custody: "The Court believes the incident was completely blown out of proportion

and that R.S. is completely safe . . . [t]heir playtime is supervised by an adult and there have been no other concerns in the last two years regarding inappropriate touching." We note, "the district court was able to listen to and observe the parties and witnesses," and "we give weight to the factual findings of the district court, especially when considering the credibility of witnesses." *McKee*, 785 N.W.2d at 736. The district court had the opportunity to listen to the witnesses and assess their credibility, and we defer to its determinations. *See id.*

As to the mother's other concerns, the district court stated: "There has been no change in the babysitter issue since the 2018 stipulation," and on the father's attentiveness to their daughter's health, "the court finds these particular issues were minor in nature and unlikely to be an ongoing problem." As to the domestic abuse allegations raised by the mother, the district court again had the opportunity to assess the witnesses and their credibility and determined: "The court does not believe that there is any domestic abuse that occurred or that is ongoing," and "the height of their anger and disagreements has passed with [the mother] leaving the home."

Considering the findings of the district court, the determinations of HHS, and our de novo review of the record before the district court at the time of the instant modification, we, like the district court, determine the mother failed to meet her heavy burden to modify custody and physical care of the parties' child. Accordingly, we affirm.

**AFFIRMED.**