# IN THE COURT OF APPEALS OF IOWA

No. 25-0233
Filed September 4, 2025

**BRIAN DAVID STRINGER,**
　　　Plaintiff-Appellee,

**vs.**

**ALISON HAYES n/k/a ALISON HERRON,**
　　　Defendant-Appellant.
_____

　　　Appeal from the Iowa District Court for Guthrie County, Michael Jacobsen,

Judge.


　　　Alison Herron appeals the physical-care provision in a custody modification.

**AFFIRMED.**


　　　Jason S. Rieper of Rieper Law, P.C., Des Moines, for appellant.

　　　Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West

Des Moines, for appellee.


　　　Considered without oral argument by Schumacher, P.J., and Badding and

Langholz, JJ.

**SCHUMACHER, Presiding Judge.**

Alison Herron appeals the physical-care provision in a custody modification. Upon our review, we affirm.

**I.     Background Facts and Proceedings**

Alison Herron and Brian Stringer are the unmarried parents of two sons, born in 2009 and 2011. In 2011, a stipulated custodial decree ordered joint legal custody, placed physical care of the children with Alison, and set the following parenting schedule for Brian:

> **Regular Parenting Schedule.** Brian is awarded reasonable and liberal rights of parenting time with the minor children. ***In the event the parties cannot otherwise agree***, Brian is awarded the following minimum visitation with the minor children:
>
> a.     **Prior to August 15, 2015**.
>          i.     **Week One.** Wednesday at 6:00 p.m. to the following Sunday at 6:00 p.m.
>          ii.     **Week Two.** Wednesday at 6:00 p.m. to the following Thursday at 6:00 p.m. (or when preschool begins on Thursday if preschool is in session).
>          iii.     **Additional Overnights.** In the event that Brian's primary residence is located within thirty (30) miles of Alison's primary residence, then Brian's parenting time with the minor children shall be extended (a) from Sunday at 6:00 p.m. to Monday at 8:00 a.m. in Week One; and (b) from Thursday at 6:00 p.m. to Friday at 8:00 a.m. in Week Two.
>
> b.     **After August 15, 2015.** Alternating weekends from Friday at 6:00 p.m. to Sunday at 6:00 p.m.; and one overnight each week (absent agreement, Wednesdays) from 6:00 p.m. to the following morning at 8:00 a.m. . . .
>          i.     **Additional Overnights.** In the event that Brian's primary residence is located within thirty (30) miles of Alison's primary residence, then Brian's parenting time with the minor children shall be extended (a) from Sunday at 6:00 p.m. to Monday at 8:00 a.m. (or when school begins); and (b) include parenting time each Wednesday at 6:00 p.m. (or after school) through Friday at 8:00 a.m. (or when school begins), continuing through Brian's scheduled weekend as appropriate.

At that time, the children were very young (two years old and several months old), and the parties lived approximately sixty-five miles apart (Alison in Guthrie Center and Brian in Norwalk). The parties informally agreed that Alison had the children on Mondays and Tuesdays; Brian had the children on Wednesdays and Thursdays; and they alternated Fridays, Saturdays, and Sundays.

In 2015, Brian and his wife moved to Guthrie Center to make it easier to have more time with Brian's children, who were starting kindergarten and preschool and becoming involved in activities.[1] Brian's parents also later moved to Guthrie Center. Upon Brian's move, the parties began operating under the 2-2-3 arrangement provided in section (b)(i) of the decree's parenting schedule. A few years later, the parties agreed to exchange the children on a week-on, week-off basis "to alleviate the going back and forth, back and forth" for the children.

In 2023, Brian filed a petition to modify the decree, alleging "there have been a material and substantial changes in circumstances warranting a change in custody in that [he] should be awarded primary physical care of the children."[2] Alison answered, agreeing Brian "has exercised a greater visitation schedule due to [Alison's] willingness to do so and desire to effectively co-parent with [Brian]," but stating she "should maintain primary physical care" of the children. Pursuant

---

[1] Brian explained the move was also prompted by Alison's sudden attempt to enforce the parenting schedule set forth in the parties' decree when she filed an application for rule to show cause, which claimed in part that Brian "wrongfully with[held] the minor children from Alison during her scheduled parenting time." The parties entered a stipulation finding Brian guilty of one count of contempt for "refus[ing] to return the minor children to Alison . . . as required under the terms of the Decree."

[2] Brian also requested sole legal custody, but he withdrew that request before trial.

to the parties' stipulation, the district court appointed Kara McClure as the child and family reporter (CFR). The court ordered the CFR to "gather and report factual information that will assist the court in making custody, parenting schedule, visitation, and other decisions related to the welfare of [the children]" and prepare a report setting forth her recommendation of the same.

Trial took place over two days in November 2024, during which the court heard testimony from Brian, Alison, the CFR, three of Alison's close friends, Alison's aunt, and Alison's co-worker. The parties both lived in Guthrie Center. Their children were in seventh and ninth grades. They were described as "good kids"—"normal teenagers" who were "heavily involved" in sports, did "decently well" in school, and had good peer groups. There were no concerns relating to their attendance, performance, or behavior at school. Alison and Brian were both involved in the children's academics and extracurricular activities.

Brian lived with his wife, Jenna, their two young children, and the parties' children. He worked as an HVAC and plumbing technician, and Jenna worked from home. Brian acknowledged he and Alison "did shared care for about 13 years," and for the most part, they were able to communicate and co-parent effectively. However, Brian stated he moved for a modification because the children had "requested to have less visitation with [Alison]" and he wanted "[t]o protect" them from the "chaos" in Alison's home. As reasons supporting his request for modification, Brian pointed to Alison's relationship with her husband, Derek, which Brian believed was "extremely volatile to the kids' well-being." Brian explained that Derek "is a felon," who "[h]as had a long drinking problem." Brian also pointed out that Alison had regular conflicts with her landlord—her uncle—

who lived next door. Another concern was the "over-involvement" of Alison's mother, who lived in Alison's home. Brian agreed that he was a stricter parent than Alison and he imposed more rules in his home, but he believed the children wanted and needed more structure in their lives, which he could provide.

Alison lived with her mother, the parties' children, and her two younger children with Derek, whom she had married in 2012. Alison worked as a paraeducator at the Guthrie Center Elementary School, a summer custodian, and a waitress one night per week. Alison testified that although the parties had "struggle[d] off and on to communicate with each other," "most likely, we can."

Alison admitted Derek "has a history of alcoholism" "[d]ating back to shortly after [the parties'] original decree was entered," which had been "normalized" for her children over the years. She acknowledged Derek's "alcohol issues" "created hostility and volatility in [their] house" and "ha[d] a negative impact on the boys." Alison agreed that her relationship with Derek had created situations for the parties' children that were not "positive thing[s] for a young man to go through," including police intervention and fighting amongst the adults in the home. Alison admitted that she and Derek had a history of discussing divorce but then reconciling. At the time of the modification trial, Derek was in inpatient treatment after being released from jail for probation violations. Alison maintained that she was "taking care of the situation" by filing for divorce six weeks prior to trial.

Relating to Brian's other concerns, Alison agreed her mother "plays an active role in decisions that are made regarding [the] boys."[3] Alison agreed her relationship with her uncle was "a little volatile," acknowledging one of the parties' children had "stuff stolen off the porch" and that "his wife may text us [things that are inappropriate], but we do not respond." In sum, Alison conceded Brian's concerns for their children were "valid" and "appropriate," but she testified, "I've always made sure . . . [t]hat they're not in any danger."

Alison raised several concerns of her own about Brian's parenting, including that he was "controlling," citing as examples that Brian had the children do yard work at his parents' home,[4] made the children have two cell phones (one for each parents' home),[5] and wanted to implement a "one-sport-per-season rule" for the children.[6] Alison was worried that if Brian was granted physical care of the children "he would not let [her] be a part of any decisions or be a part of any of their events or schedule."[7] She further believed that Brian "force[d] her to acquiesce" and did not always appreciate her "time with the boys,"[8] citing a time she begrudgingly allowed Brian to have the children during her parenting time so they could go on a family vacation "[b]ecause it is what's best for the boys, and going on vacation and

---

[3] In her brief on appeal, Alison states that her mother "is now deceased, having passed away on March 31, 2025." We note that information was not available to the district court, as it issued its modified decree in January 2025.

[4] Alison acknowledged the boys "ma[de] a little extra money" by helping with chores. Her main concern was that Brian contacted the boys directly about the yard work, rather than contacting her.

[5] The CFR agreed the children "don't need two phones."

[6] Alison conceded Brian may be "concerned with burnout, or just [that multiple sports were] too much for the boys."

[7] However, Alison acknowledged the parties agreed they would retain their rights as joint legal custodians of the children.

[8] The CFR opined that Brian supported Alison's relationship with the children.

spending time with their dad and siblings and their stepmom would—is good for them." Ultimately, however, Alison asked the court to deny Brian's petition for modification and order the parties to continue to have shared physical care of the children, "50/50."

Alison's aunt described Alison's relationship with Derek as "problematic at times." She testified that Alison had "a full plate" with four children, particularly because one of her children with Derek had special needs. Alison's neighbor and close friend, Rebecca, testified that Derek was mean to Alison in front of the children but Alison "tr[ied] to manage and maintain it." According to Rebecca, "most of the time, when it was ever taken to that level, she would call us, and my husband and I would go down to the home and remove [Derek] from the home," but toward "the end," they "called the police every time."

The CFR testified that she had communicated with the parties, conducted home visits, and met with the children "five times." She also communicated with relevant others and gathered information from the children's school. The CFR filed her report with the court, which centered on concerns about the stability and safety of Alison's home in relation to the children's best interests. The CFR noted the children "have grown up with this dysfunction as their normal childhood; they are exhausted and want change." The CFR further opined that as the children have gotten older, their exposure to the environment in Alison's home had created more potential for harm. The CFR reported, in part:

> The current schedule and dynamics are disruptive, and the boys desire to have more structure, less involvement in co-parenting matters, and a peaceful atmosphere. [The children] desire stability and peace as [they] continue[] through high school and . . . middle school. I believe Brian is better suited to provide the structure and

peace the boys need, and that he can more effectively administer to the boys' well-being.

The CFR recommended that Brian should be awarded physical care of the children.

In January 2025, the district court entered a modification order finding a material and substantial change in circumstances had occurred that warranted modification of physical care. The court stated:

> In this case, the court finds that there have been substantial changes in circumstance since the parties' Decree was entered. Those changes in circumstance were not in the contemplation of the court at the time of the original Decree. [The children] are in need of more stability during the school year due to the chaos in Alison's home. It is in their best interest that Brian be awarded primary physical care. Alison should have parenting time as the parties agree or as the court sets below. To minimize exchanges Alison should have parenting time every other weekend, beginning on Thursday and continuing to Monday morning.
> The court agrees that the holiday schedule should be adjusted as agreed by the parties. The court further agrees that Brian and Alison should continue to have joint legal custody.

Accordingly, the court modified the decree to place physical care with Brian.

Alison appeals.

## II. Standard of Review

"Our review of matters involving child custody and child support is de novo. We examine the entire record and decide anew the issues properly presented. While we are not bound by the fact-findings of the district court, we give them weight, especially as to credibility determinations." *Thorpe v. Hostetler*, 949 N.W.2d 1, 4–5 (Iowa Ct. App. 2020) (cleaned up).

## III.  Modification of Physical Care

Alison claims the district court erred in finding a "material and substantial change in circumstances since the parties' original decree in 2011; and, even assuming for the sake of argument that Brian did prove a material and substantial change in circumstances," "Brian failed to show that he is a superior parent when compared to Alison."   The guiding principles used to determine whether a modification should occur are well-established[9]:

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change.   The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary.  They must relate to the welfare of the children.  A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well being.

*In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983).

On our de novo review, we find the district court's detailed and comprehensive findings provide a thorough and well-written explanation for the court's modification order.  We observe that "once custody of children has been fixed it should be disturbed only for the most cogent reasons."  *Id.*  Here, Alison's relationship with Derek and other aspects of her parenting have created a harmful

---

[9] The same standards apply to modification of physical care provisions whether originally set in a dissolution decree or a custody order for never married parents under Iowa Code chapter 600B (2023). *See Hardgraves v. Goulette*, No. 23-0818, 2024 WL 960944, at *1 n.1 (Iowa Ct App. Mar. 6, 2024) (citing Iowa Code § 600B.40(2)).

environment for the children,[10] constituting a substantial change in circumstances and warranting modification of physical care to Brian. *See Thorpe*, 949 N.W.2d at 7–8 (noting the mother's "rocky" relationship and "chaotic home life" weighed against keeping the child in her physical care in a modification action); *see also, e.g.*, *Davis v. Ladenthin*, No. 24-1437, 2025 WL 1825311, at *1, *3–4 (Iowa Ct. App. July 2, 2025) (considering in part the mother's "unhealthy relationships," which she placed "above the child's needs," in determining the father "can provide the environment most likely to bring the child 'to health, both physically and mentally, and to social maturity'" (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 695 (Iowa 2007))); *In re Marriage of Decker*, 666 N.W.2d 175, 179 (Iowa Ct. App. 2003) (observing if a parent establishes a home with another adult, "that adult's background and his or her relationship with the children becomes a significant factor in a custody dispute").

As a reviewing court, our primary focus is the best interests of the children. *Thorpe*, 949 N.W.2d at 5. "In custody modification cases, stability is the trump card." *Rolling v. Hoffman*, No. 14-0102, 2014 WL 2600315, at *2 (Iowa Ct. App.

---

[10] Alison testified she was "in the process of getting a divorce" from Derek. However, the CFR did not believe Derek being out of Alison's home alleviated the issues with stability and structure. As the CFR testified:

> Q. The boys are wanting structure that they would get at their dad's house. Am I— A. Correct.
>
> Q. —understanding that? And do you think the boys can receive that same structure at their mom's house? A. No.
>
> Q. And is that contingent, for example, on whether [Derek] is living there or not living there? A. No.
>
> Q. Do you think that while it might be slightly better if he's gone—I think we can agree on that—do you think that fixes the problems that have existed in Mom's home for the last decade? A. No.

June 11, 2014).  Under these facts and circumstances, we concur with the district court that the children's interests are best served by modification of physical care to Brian.  We affirm the court's order.

## IV.    Appellate Attorney Fees

Brian seeks an award of $11,600 in appellate attorney fees.  Such an award is not a matter of right but rests within our discretion.  *Hensch v. Mysak*, 902 N.W.2d 822, 827 (Iowa Ct. App. 2017).  In deciding whether to award appellate attorney fees, "we consider the needs of the party making the request, the ability of the other party to pay, and whether the party making the request was obligated to defend the decision of the trial court on appeal."  *Id.*  After consideration of these factors, we deny Brian's request.

## V.    Conclusion

We affirm the district court's modification order.  We decline to award appellate attorney fees.  Costs on appeal are taxed to Alison.

**AFFIRMED.**