# IN THE COURT OF APPEALS OF IOWA

No. 18-1838
Filed May 15, 2019

**BRADLEY WAYNE VAN GUNDY,**
 Plaintiff-Appellee,

**vs.**

**JENNIFER GRACE BOLTON,**
 Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Linda L. Fangman, Judge.

A mother appeals from an order modifying the physical care provisions of a custody order. **AFFIRMED.**

Nina Forcier of Forcier Law Office, P.L.L.C., Waterloo, for appellant.

Shanna Chevalier of Laird & Luhring, Waverly, for appellee.

Considered by Doyle, P.J., Mullins, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**GAMBLE, Senior Judge.**

Jennifer Bolton appeals from an order modifying the physical care arraignment between herself and Bradley (Brad) Van Gundy granting Brad physical care of their daughter, O.V.G. On appeal, Jennifer argues the district court erred in determining it was in O.V.G.'s best interest to place physical care with Brad. She also argues the court erred in denying her request for attorney fees and requests appellate attorney fees. Brad also requests appellate attorney fees.

**I. Background Facts and Proceedings.**

Jennifer and Brad are the never-married parents of O.V.G., age seven at the time of trial. When the parties began their relationship, Jennifer had three children from prior relationships and was married to another man. After the parties' romantic relationship ended, they entered into a stipulated agreement providing for joint physical care of O.V.G. However, the parties largely ignored the terms of the stipulation and employed a flexible care schedule that worked well for them. Both lived in the Waterloo/Cedar Falls area and open-enrolled O.V.G. in the Cedar Falls school district.

Both parents entered into new relationships. Jennifer lived with at least three different men, married and divorced her third husband, and then remarried Nathan Bolton, the man to whom she was legally married while pregnant with O.V.G. Jennifer also had three more children, two from a sperm donor while married to her third husband and one with Nathan after they remarried. Brad lived with another woman and her daughter for roughly six months. Then his girlfriend and her daughter moved into his home approximately five years before trial.

Jennifer became concerned about one of her older children, who was living in the Des Moines area with his father and step-mother, and determined she needed to move closer to the child. She informed Brad of her plan to move her family via text message, indicating she expected the move to occur in roughly six months. However, Jennifer sold her business and her home sooner than expected. Jennifer's family moved to Ankeny just three months later. Around this time, Jennifer and Brad's relationship began to deteriorate. Initially, Jennifer wanted O.V.G. to move with her to Ankeny at the end of the school year and spend more time with Brad on the weekends and in the summer to compensate. Brad wanted O.V.G. to live with him so that she could continue to attend the same school and be near both his and Jennifer's extended family.

As a result, Brad petitioned for modification and sought an emergency temporary order to prevent Jennifer from moving O.V.G. to Ankeny. The district court granted Brad's request for a temporary order. Pursuant to the temporary order, O.V.G. stayed with Brad in the Waterloo area, and Jennifer exercised visitation with O.V.G.. O.V.G. began school in the Cedar Falls district in August, so Jennifer requested O.V.G. be placed with her at the end of the fall semester to ease the transition back to her physical care. The matter proceeded to trial, and the court found Jennifer's move amounted to a material and substantial change in circumstance and it was in O.V.G.'s best interest for Brad to retain physical care of her. Jennifer now appeals. Additional facts will be set forth as necessary to address the issues raised on appeal

**II. Scope and Standards of Review.**

Actions to modify physical care of a child are reviewed de novo. *See* Iowa R. App. P. 6.907 (stating equitable proceedings are reviewed de novo); *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002). When considering whether to modify physical care provisions, the analysis is the same regardless of whether the parents were ever married. *See* Iowa Code § 600B.40(2) (2018). "Prior cases have little precedential value, and we must base our decision primarily on the particular circumstances of the parties presently before us." *Melchiori*, 644 N.W.2d at 368. However, the district court is afforded deference for institutional and pragmatic reasons. *Hensch v. Mysak*, 902 N.W.2d 822, 824 (Iowa Ct. App. 2017). Accordingly, we give weight to the district court's factual findings and will affirm the district court's ruling unless it "failed to do substantial equity." *See id.*

The denial of attorney fees is reviewed for an abuse of discretion. *See* Iowa Code § 600B.26 ("[T]he court *may* award the prevailing party reasonable attorney fees." (emphasis added)); *In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989). "The court has considerable discretion in awarding attorney fees." *In re Marriage of Schenkelberg*, 824 N.W.2d 481, 488 (Iowa 2012).

**III. Discussion.**

**A. Physical Care.**

"The general principles guiding our adjudication of petitions for modification of dissolution decrees are well-established." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). Before we may consider whether the district court correctly modified the physical care arrangement, we must first consider whether a material and substantial change in circumstance occurred to warrant a

modification. *See Hoffman*, 867 N.W.2d at 32; *Melchiori*, 644 N.W.2d at 368 ("Courts are empowered to modify the custodial terms of a paternity decree only when there has been a substantial change in circumstances since the time of the decree, not contemplated by the court when the decree was entered, which was more or less permanent, and relates to the welfare of the child."). As the petitioner, Brad's burden to show a material and substantial change in circumstance is a heavy one, "undergirding the fundamental policy that 'once custody of [a] child[ ] has been fixed it should be disturbed only for the most cogent reasons.'" *Hoffman*, 867 N.W.2d at 32 (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)) As the district court concluded, and the parties conceded, we conclude Jennifer's move amounts to a material and substantial change in circumstance not contemplated by the district court at the time of the original stipulation—satisfying this threshold requirement.

When considering what, if any, modification is necessary in light of the changed circumstance we focus on what physical care arrangement would be in O.V.G.'s best interest. *See id.* ("The children's best interest is the 'controlling consideration.'"). "Utilizing the best-interest standard 'provides the flexibility necessary to consider unique custody issues on a case-by-case basis.'" *Id.* (quoting *In re Marriage of Hansen*, 733 N.W.2d 683, 696 (Iowa 2007)). The best-interest standard provides for a variety of factors for the court to consider when reaching a physical care determination. *See* Iowa Code § 598.41(3) (listing factors); *In re Marriage of Winter*, 223 N.W.2d 165, 16–67 (Iowa 1974) (listing factors). Given the increased distance between Brad and Jennifer's homes, it is not realistic to maintain a joint physical care arrangement, and we are required to

determine which parent should retain physical care of O.V.G. while the other is awarded visitation. *See In re Marriage of Hynick*, 727 N.W.2d 575, 579 (Iowa 2007) ("When joint physical care is not warranted, the court must choose one parent to be the primary caretaker, awarding the other parent visitation rights."). Because Jennifer and Brad previously enjoyed joint physical care, we find both were already deemed suitable physical care givers. *See Melchiori*, 644 N.W.2d at 368-69.

We must consider the best-interest factors enumerated in Iowa Code section 589.41(3) and *Winter* to determine which parent will be better suited to minister to O.V.G.'s needs. *See Frederici*, 338 N.W.2d at 160. Historically, Brad and Jennifer co-parented effectively. Both parents shouldered the burden of raising O.V.G. together, often delegating certain tasks to one parent. For example, Jennifer delegated O.V.G.'s involvement in extracurricular activities to Brad. Brad deferred to Jennifer regarding O.V.G.'s medical appointments. The parties performed other parenting duties together, like attending school conferences. As a result, the parent assuming physical care will be required to assume duties previously delegated to the other parent.

On de novo review, we agree with the district court's conclusion that O.V.G. is best served by Brad retaining physical care. While both parents have maintained a close relationship with O.V.G. and affirmatively assumed various parenting duties, Brad has provided a more stable home life than Jennifer and is likely to continue to do so. He has introduced fewer people into his home than Jennifer has hers and remained in the same home since entry of the original stipulation. By contrast, Jennifer has moved multiple times, lived with at least three

romantic partners, and entered into an abusive relationship resulting in acts of aggression in front of O.V.G. By placing O.V.G. with Brad, it is more likely she will be able to remain in the same school, remain in close proximity to her extended family, and remain involved in her extracurricular activities. Certainly, Brad will be required to take on parenting duties Jennifer previously attended to, such as attending O.V.G.'s health appointments, but he testified he will be able to do so due to his work's flexibility. When Brad is not available, he has extended family in the Waterloo area to help. Additionally, with O.V.G. in Brad's care, she will be able to continue to see the same physicians and dentist that are already aware of her medical and dental history.

Jennifer argues placing O.V.G. with Brad would separate her from her half-siblings because four of O.V.G.'s six half-siblings remain in Jennifer's care. There is "a strong interest in keeping children of broken homes together" and this principle "govern[s] awards of physical care in cases of half siblings." *In re Marriage of Orte*, 389 N.W.2d 373, 374 (Iowa 1986). However, this principle does not mandate a parent with physical care of a half-sibling be awarded physical care of the child at issue despite other compelling factors militating against an award of physical care to that parent. *See, e.g.*, *In re Marriage of Jacobson*, No. 17-1040, 2018 WL 1633512, at *4 (Iowa Ct. App. Apr. 4, 2018) ("[S]imply because one parent has physical care of a half-sibling does not mean the parent must have physical care of the child at issue."); *Moses v. White*, No. 17-0823, 2017 WL 5185450, at *2 (Iowa Ct. App. Nov. 8, 2017); *Hyde v. Mann*, No. 16-1452, 2017 WL 2461611, at *4 (Iowa Ct. App. June 7, 2017); *In re Marriage of Brauer*, 511 N.W.2d 645, 647 (Iowa Ct. App. 1993).

Here, O.V.G.'s care was previously split between her parents' homes, already separating her from her half-siblings to an extent. Awarding Brad physical care will no doubt increase this separation. However, because O.V.G. previously spent roughly half her time away from her siblings and in Brad's care, any additional separation is unlikely to materially alter O.V.G.'s relationships with her half-siblings. The parties can reduce the amount of separation by scheduling O.V.G.'s visitation with Jennifer at times when her other children are present in her home. Given the relative stability of Brad's home and superior ability to care for O.V.G.'s future needs, we conclude it is in O.V.G.'s best interest for Brad to retain physical care despite the increased separation between O.V.G. and her half-siblings.

Jennifer claims Brad made unsubstantiated claims about her to sway the court in his favor. She focuses on her mental-health evaluation submitted to the court by Brad from roughly a decade ago. This previous evaluation does not bear on our determination, and we do not consider it as a reflection of Jennifer's current mental health. She also argues the court should not consider the testimony of her ex-husbands because they have an interest in portraying her in a negative light. Even without consideration of the ex-husbands' testimony, we still conclude Brad can provide O.V.G. with superior care and affirm the district court's grant of physical care to Brad.

**B. Attorney Fees.**

"[T]he court may award the prevailing party reasonable attorney fees" in modification proceedings. Iowa Code § 600B.26. Jennifer contends given her financial need, the district court abused its discretion in denying her request for

attorney fees. *See Francis*, 442 N.W.2d at 67. We disagree and find no abuse of discretion. Both parties request appellate attorney fees. "Appellate attorney fees are not a matter of right, but rather rest in this court's discretion." *In re Marriage of McDermott*, 827 N.W.2d 671, 687 (Iowa 2013) (quoting *In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005)). "In determining whether to award appellate attorney fees, we consider 'the needs of the party seeking the award, the ability of the other party to pay, and the relative merits of the appeal.'" *Id.* (quoting *Okland*, 699 N.W.2d at 270). After considering the relevant factors, we decline to award either party appellate attorney fees.

**IV. Conclusion.**

When addressing the issues presented on appeal, we considered each of the parties' arguments, whether discussed in full herein. We conclude the district court did not err in finding a material change in circumstance necessitating modification of the physical care arrangement. On our de novo review and giving deference to the district court's factual findings, we agree with the district court's conclusion Brad should retain physical care of O.V.G. because he can provide superior care. The district court did not abuse its discretion in denying Jennifer's request for attorney fees, and we decline to award appellate attorney fees to either party.

**AFFIRMED.**