**IN THE COURT OF APPEALS OF IOWA**

No. 18-1707
Filed July 24, 2019

**IN RE THE MARRIAGE OF CHRISTOPHER C. VESEY
AND KELLY ANN VESEY**

**Upon the Petition of
CHRISTOPHER C. VESEY,**
        Petitioner-Appellant,

**And Concerning
KELLY ANN VESEY,**
        Respondent-Appellee.

_____

        Appeal from the Iowa District Court for Dallas County, Terry R. Rickers,

Judge.

        A father appeals the district court's modification of the physical-care

arrangement for his two children. **AFFIRMED.**

        Anjela A. Shutts and Tyler L. Coe of Whitfield & Eddy, P.L.C., Des Moines,

for appellant.

        Christopher B. Coppola and Megan Flynn of Coppola, McConville, Carroll,

Hockenberg & Flynn, P.C., West Des Moines, for appellee.

        Considered by Potterfield, P.J., and Tabor and Bower, JJ.

**TABOR, Judge.**

Chris and Kelly Vesey stipulated to joint physical care for their two sons; the district court approved that stipulation in their divorce decree. As she contemplated moving to a community nearly one-hundred miles away, Kelly sought to modify the custody arrangement. The district court granted her motion to modify, "contingent upon" her "actually moving" within ninety days of the order. On appeal, Chris contends the court wrongly decided Kelly's prospective move was cause for modification. Because Kelly proved her move would be a substantial change in circumstances justifying a switch from shared care to designating her as the primary caregiver, we affirm the modification order.

## I. Facts and Prior Proceedings

Chris and Kelly were married in 2005 and divorced in 2015. Chris is a detective with the West Des Moines Police Department. Kelly works for Wells Fargo as a business systems consultant. They have two sons, G.C.V. and L.J.V. At the time of the divorce, the district court granted the parents joint legal custody, as well as joint physical care of both boys. The decree adopted the parents' stipulation to a "fifty-fifty custody arrangement."

Twelve-year-old G.C.V. and eight-year-old L.J.V. continue to attend school in the Waukee district where Kelly currently resides. Chris lives in West Des Moines. To accommodate the children's schedules, Chris drops them off at Kelly's house each morning after they stay with him so they can catch a bus to school. Additionally, Chris's police work occasionally requires him to be on-call. During those times, the children stay at Kelly's house regardless of whose parenting time

it would regularly be. Over time, these adjustments led to the children spending more of their time in Kelly's care than with Chris.

In August 2017, Kelly petitioned for modification of the decree, claiming material and substantial changes warranted altering the physical care arrangement. Kelly argued four points:

(1) Chris was not following the agreed-upon parenting schedule;

(2) Communication had broken down between them;

(3) G.C.V. began receiving counseling; and

(4) Kelly planned to move to Williamsburg, Iowa, the following July
    to be closer to her extended family.

The district court heard arguments from both sides on all four issues, and ultimately found only the impending move rose to the level of a material and substantial change.

Kelly offered several reasons for wanting to move to Williamsburg, which is about ninety-six miles from West Des Moines. She is originally from that area and much of her family, including both her parents, still live there. Kelly relies heavily on her family, particularly her parents, as her support system when she is parenting. Her parents occasionally travel from Williamsburg to Waukee to help with transportation for the boys' activities. G.C.V. is particularly close with Kelly's father, who is a farmer, a job that greatly interests G.C.V. Kelly is also pursuing a serious relationship with Jason Haack, who lives in Williamsburg and is a farmer as well. The record shows both children get along well with Jason. The move would not impact her current employment, as Wells Fargo allows Kelly to work

remotely. Kelly believes the boys would have opportunities in Williamsburg similar to those in Waukee, with the exception of lacrosse, which G.C.V. currently plays.

In its modification ruling, the court granted Kelly "primary physical care of the children, provided that she actually moves to Williamsburg within ninety days of entry of this order." Chris appeals.

## II. Standard of Review

We review orders modifying dissolution decrees de novo. *In re Marriage of Pals*, 714 N.W.2d 644, 646 (Iowa 2006). We give weight to the district court's fact findings, but they do not dictate our decision. Iowa R. App. P. 6.904(3)(g). We accord special weight to the district court's findings of witness credibility, as the district court better understands "the impression created by the demeanor of each and every witness as the testimony is presented." *In re Marriage of Vrban*, 359 N.W.2d 420, 423 (Iowa 1984). We will disturb the decision of the district court "only when there has been a failure to do equity." *In re Marriage of Okland*, 699 N.W.2d 260, 263 (Iowa 2005).

## III. Analysis

We engage in a two-step analysis when faced with a request to change joint physical care. First, the petitioning parent must show a material and substantial change in circumstances not contemplated by the court at the time of the decree. *In re Marriage of Mihm*, 842 N.W.2d 378, 382 (Iowa 2014). The change must be more or less permanent, and the modification must be in the best interest of the children. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). Second, if the court determines the joint physical care agreement is no longer feasible, it must determine which parent is better suited to continue taking care of the

children's everyday needs.  *Melchiori v. Kooi*, 644 N.W.2d 365, 368 (Iowa Ct. App. 2002).

Chris disputes the soundness of the district court's conclusion that Kelly's plans to move to Williamsburg were a material and substantial change in circumstances justifying a modification to physical care.  Additionally, he believes it would not be in the best interest of the children to change physical care.  Kelly argues her move to Williamsburg constitutes a material and substantial change.[1] She contends she did not want to take any drastic steps until she was sure she could bring the children with her.  She believes Williamsburg will be a better place to raise the children, with a better network of support.

## A.    Change in Circumstances—Not Contemplated

To constitute a change warranting modification, the circumstances must not have been contemplated by the court at the time of the decree.  *Frederici*, 338 N.W.2d at 158.  Chris argues the district court contemplated Kelly's move to Williamsburg because the incorporated stipulation included a provision addressing potential moves by either parent.[2]  But we have previously found similar language in a decree did not prove the district court contemplated relocation at the time of the original decree, and we were "unwilling to conclude the inclusion of such a

---

[1] Kelly also presents three alternative arguments in support of modification.  Because we affirm on the same ground as the district court, we need not reach these arguments.

[2] The section stated:

> OUT OF AREA MOVE OR CHANGE IN EMPLOYMENT/HOURS.  Should either party desire to move out of the current area, or should either party have a change in employment or hours either party may file a [p]etition with this [c]ourt to modify the current arrangement regarding custody, visitation and other matters.  However, the parties agree to work with a mediator or parenting coordinator to resolve any issues prior to filing suit in case of emergency.

provision . . . automatically causes the parent who is not moving to forfeit the right to challenge the removal of the children from Iowa based on the children's best interests." *In re Marriage of Gartner*, No. 15-1370, 2016 WL 3002778, at *5 (Iowa Ct. App. May 25, 2016).[3] We are not persuaded we should interpret a relocation provision differently when the challenger is the moving parent. *Cf. id.* Morever, here, the stipulation allowed a party who desired to move out of the current area to seek modification. The original decree did not contemplate Kelly's desire to move to Williamsburg.

### B.       Change in Circumstances—Material and Substantial

The court may modify physical care only if the petitioning parent demonstrates the change is material and substantial. *Frederici*, 338 N.W.2d at 158. Chris challenges the court's conclusion Kelly's intentions to move to Williamsburg met that test. He argues relocation is not, by itself, a substantial change in circumstance.

When a decree provides for joint physical care and one parent seeks to move the children so far away that the parents are unable to continue the children's daily routines, the move is a material and substantial change in circumstances. *In re Marriage of Eggeling*, No 18-0234, 2019 WL 478818, at *3 (Iowa Ct. App. Feb. 6, 2019) (concluding one parent's move of about ninety miles "triggered the need

---

[3] In *Gartner*, the decree included this provision:

> **d. Relocation.** In the event Heather relocates more than 50 miles from her current residence, she shall give Melisa no less than 180 days' notice of her intent to move. Following Heather's notice, the parties shall attend mediation. If mediation is not successful, a custody evaluation shall be conducted, with the costs shared equally by the parties. The purpose of the evaluation shall be to determine whether it is in the best interest of the children to relocate.

to abandon joint physical care"). The Veseys' current arrangement is not sustainable if the parents live nearly one and one-half hours apart. Similar to *Eggeling*, such an arrangement would place an undue burden on the children, which is enough to constitute a material and substantial change in circumstances. *See id.*

### C.    Best Interests of the Children

No matter the change in circumstances, our first priority remains the best interests of the children. *Dale v. Pearson*, 555 N.W.2d 243, 245 (Iowa Ct. App. 1996). Any modification must be in line with that goal. Here, the burden of proof lies with Kelly to show she is better able to minister effectively to the well-being of the children. *See Frederici*, 338 N.W.2d at 158.

Chris argues Kelly failed to meet this burden of proof at trial. The district court disagreed, finding Kelly was in a superior position to stay involved in the boys' everyday activities and overarching needs. Like the district court, we conclude Kelly would be the better physical care provider. Both parents are equally capable of raising their children. But the reality of their current situation has put far more pressure on Kelly to be responsible for the children's needs and she has carried out those responsibilities effectively.

Additionally, Kelly has demonstrated the boys would benefit from living in Williamsburg, particularly because of their proximity to her extended family. The district court found G.C.V. had positive opinions of Williamsburg and the potential of living near his grandparents. *See In re Marriage of Hunt*, 476 N.W.2d 99, 101 (Iowa Ct. App. 1991) ("When a child is of sufficient age, intelligence, and discretion to exercise an enlightened judgment, his or her wishes, though not controlling may

be considered by the court, with other relevant factors, in determining child custody rights."). All parties agreed G.C.V. thrived when exposed to his grandfather and would be able to further his interests in farming. Less evidence demonstrates L.J.V.'s opinion of moving to Williamsburg, but nothing suggested the move would be detrimental to him.

The district court found Kelly credible in her desire to move to be closer to her family and to provide a better support system for her children. *See In re Marriage of Thielges,* 623 N.W.2d 232, 238 (Iowa Ct. App. 2000). On this record, placing physical care with Kelly would serve the children's best interests.

### D. Speculative Nature of Modification Order

Chris argues even if the potential move is a substantial change and would be in the children's best interests, the court's order is too speculative to be carried out. It is true we disapprove of physical care modifications that are temporary or involve speculation on the part of the district court as to the future actions of the parties. *Id.* at 237–38 ("A court should not try to predict the future for families, nor should it try to limit or control their actions by such provisions."). But we may permit modification of physical care arrangements before a parent moves when the relocation is imminent and done for valid reasons. *Id.* at 238.

By necessity, the district court's order was somewhat provisional. The court modified the physical care arrangement "contingent upon Kelly actually moving to Williamsburg." The court placed a ninety-day deadline on the relocation. If she did not move by then, the court could reconsider the modification in light of those circumstances. In crafting this contingency, the court avoided placing the family in the uncomfortable position of requiring Kelly to complete the move before seeking

modification. The district court appropriately granted the modification before Kelly's actual move. *See id.* at 238. The ninety-day review period limits the speculative nature of the order.

## IV. Conclusion

Like the district court, we conclude Kelly's impending move to Williamsburg constituted a material and substantial change in circumstances that warranted modifying the shared care arrangement. Granting physical care to Kelly upon her move is in the best interests of the children. The court properly reserved the possibility of reconsidering the modification if Kelly did not move.

**AFFIRMED.**