# IN THE COURT OF APPEALS OF IOWA

No. 18-0699
Filed August 7, 2019

IN RE THE MARRIAGE OF SAMANTHA J. McMILLIAN
AND JUSTIN R. McMILLIAN

Upon the Petition of
SAMANTHA J. McMILLIAN,
     Petitioner-Appellant,

And Concerning
JUSTIN R. McMILLIAN,
     Respondent-Appellee.

_____

Appeal from the Iowa District Court for Cerro Gordo County, Colleen D. Weiland, Judge.

Justin McMillian appeals the district court's denial of his petition to modify the parties' dissolution decree to order physical care of the parties' child with him. **AFFIRMED.**

Jesse M. Marzen of Marzen Law Office, P.L.L.C., Waverly, for appellant.

William T. Morrison of Morrison Law Firm, P.C., Mason City, for appellee.

Considered by Vaitheswaran, P.J., Doyle, J., and Vogel, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VAITHESWARAN, Presiding Judge.**

Justin and Samantha McMillian married in 2011 and divorced in 2015. Under a stipulated dissolution decree, the district court granted Samantha physical care of their child, born in 2008.

Justin petitioned for a modification of the decree. Samantha responded that he failed to establish a substantial change of circumstances warranting modification of physical care. At the same time, Samantha sought a modification of the decree's visitation provisions. Following trial, the district court denied Justin's modification petition but granted Samantha's request to alter the visitation schedule. On appeal, Justin only challenges the court's denial of his request for physical care.

The party seeking modification of physical care bears a "heavy burden." *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). That is because once custody of a child has been fixed, it should be disturbed only for the most cogent reasons. *Id.*

> To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change. The changed circumstances must not have been contemplated by the court when the decree was entered, and they must be more or less permanent, not temporary. They must relate to the welfare of the children. A parent seeking to take custody from the other must prove an ability to minister more effectively to the children's well-being.

*In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (quoting *Frederici*, 338 N.W.2d at 158).

The district court proceeded directly to the question of Justin's caretaking ability, and addressed the issue as follows:

> Justin's housing has been more stable than Samantha's, but no other factor weighs in his favor. Samantha uses or allows methods of discipline that this court would not endorse, but they are not outside of acceptable parenting parameters. On the other hand, because of Justin's work schedule, A.M. would largely be parented by Justin's spouse—a spouse who, with Justin's blessing, acts despicably towards Samantha. Justin's home is crowded, and the court finds Samantha's concerns about hygiene and smoking in his household to be credible. The Court also considers that Justin subjected Samantha to domestic abuse during their marriage. While those instances occurred before the dissolution decree, a history of domestic abuse remains relevant. Samantha shall continue to exercise A.M.'s physical care.

On our de novo review, we begin with the court's consideration of Justin's housing stability.

Justin's spouse testified that five children lived in their home, one with serious behavioral diagnoses. She conceded they would have to move to a larger home when the youngest child got older. It is true that Justin's single potential relocation paled in comparison to Samantha's many moves following entry of the decree. And it is true that her moves resulted in the child's enrollment in multiple schools over a two-year period, including an online program, to which Justin objected. But, at the time of the modification hearing, Samantha had returned to her hometown of Mason City and had enrolled the child in a public school across the street from her grandparents and aunt and uncle. She recognized the adverse effect of the relocations on the child and she committed to staying in Mason City, to avail herself of family support and a consistent public school environment. While Samantha's multiple moves and school changes may have amounted to a substantial change of circumstances not contemplated by the district court at the

time of the decree, we agree with the court that, even if they did, Justin failed to prove he could "minister more effectively" to the child's well-being. *Cf. id.* (finding no substantial change of circumstances from a single relocation from a suburban to a rural school district).

In addition to his turbulent home environment, the district court was correct in considering Justin's history of domestic violence. *See, e.g.*, *In re Ziegler*, No. 05-0911, 2006 WL 623685, at *3 (Iowa Ct. App. Mar. 15, 2006) ("While [the father's] pre-stipulation behavior would not be relevant to establishing a substantial change in circumstances, it is relevant to the questions of whether he would prove the superior caretaker, and whether it would be in [child's] best interests to be placed in his physical care." (citing *In re Marriage of Daniels*, 568 N.W.2d 51, 55 (Iowa Ct. App. 1997) ("[Domestic] abuse discloses a serious character flaw in the batterer, and an equally serious flaw in parenting. . . . [It] is, in every respect, dramatically opposed to a child's best interests."))); *Smith v. Smith*, No. 03-0863, 2004 WL 433906, at *2 (Iowa Ct. App. Mar. 10, 2004) (noting the district court's acknowledgment of "the seriousness of domestic violence and the negative impact it has on children"). Samantha described Justin as "very aggressive" with "a lot of anger issues." She expressed concern that if he served as primary caretaker, the child would "become too violent." Although Justin testified he was never the subject of a founded child abuse report, he conceded he spanked the child with a wooden spoon "when [the child] was younger."

Justin also did not establish he would communicate more effectively than Samantha about the child's welfare. He described his relationship with Samantha as "terrible" and stated there was "no communication between" them. His spouse

did not help matters. On one occasion, she told Samantha she "wanted to smack her head off [her] door." Although Samantha conceded she bore some of the responsibility for the breakdown in communication, Justin carried the burden of proving he would do better than her on that front. He failed to meet his burden.

We conclude the district court acted equitably in denying Justin's petition to modify the physical care provision of the dissolution decree. We affirm the court's decision.

Samantha seeks appellate attorney fees of $2500. An award rests within our discretion. *See In re Marriage of Okland*, 699 N.W.2d 260, 270 (Iowa 2005). Among the factors to consider are "the relative merits of the appeal." *Id*. After consideration of the merits, we grant Samantha's request. Justin is ordered to pay $2500 towards Samantha's appellate attorney fee obligation.

**AFFIRMED.**