## IN THE COURT OF APPEALS OF IOWA

No. 19-1758
Filed August 5, 2020

**IN RE THE MARRIAGE OF KOLBIE RENEE MANWARREN
AND JAMI LYNN MANWARREN**

**Upon the Petition of**
**KOLBIE RENEE MANWARREN,**
        Petitioner-Appellee,

**And Concerning**
**JAMI LYNN MANWARREN,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Dickinson County, Charles K. Borth,

Judge.

        Jami Manwarren appeals the district court's denial of his petition to modify

the decree dissolving his marriage to Kolbie Manwarren.  **AFFIRMED.**

        Michael H. Johnson, Spirit Lake, for appellant.

        Scot L. Bauermeister of Fitzgibbons Law Firm, L.L.C., Estherville, for

appellee.

        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**VAITHESWARAN, Presiding Judge.**

Jami and Kolbie Manwarren married in 2006 and divorced in 2017. The district court approved a stipulation under which Kolbie assumed physical care of their three children, subject to visitation with Jami. The court ordered Jami to pay Kolbie $300 per month in child support.

Fourteen months after the dissolution decree was filed, Jami filed a modification petition, alleging problems with implementation of the agreed parenting plan. Following a hearing, the district court denied Jami's request for physical care of the children, increased his child support obligation, and ordered him to pay a portion of Kolbie's trial attorney fees.[1]

On appeal, Jami (1) challenges the court's denial of his request to modify the physical care provision of the dissolution decree; (2) contends the court should not have imputed income to him in calculating child support; and (3) claims the court abused its discretion in ordering the payment of trial attorney fees.

## I.     *Modification of Physical Care*

"To change a custodial provision of a dissolution decree, the applying party must establish by a preponderance of evidence that conditions since the decree was entered have so materially and substantially changed that the children's best interests make it expedient to make the requested change." *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015) (quoting *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983)). The party also must establish an ability "to minister

---

[1] The court also modified the visitation provision of the decree. Jami does not challenge that modification.

more effectively to the children's well being." *Id.* The burden is a heavy one. *See id.*

Jami contends he satisfied that burden. He points to Kolbie's "lack of co-parenting," including "an attempt to marginalize [him] in the children's lives." In his view, Kolbie's negative behaviors were precipitated by his remarriage. He asserts she said "bad things about him in front of the children" and "threatened to spread . . . untrue and defamatory" statements in the community. He also cites "the escalating behaviors" of the oldest child and "Kolbie's increased inability to properly handle those behaviors."

The district court expressed "some trepidation" about Jami's history predating the divorce, then proceeded to evaluate Jami's critique of Kolbie. Beginning with his contention that Kolbie disparaged him in front of the children and others, the court found:

> While it appears Kolbie has used some poor judgment in discussing adult issues in the presence of the children and calling Jami names in front of the children, the record does not otherwise support Jami's assertion that she is not making a good effort to make Jami a part of the children's lives. In fact, the record contains no evidence that Kolbie has denied Jami any of his court-ordered visitation. On the other hand, she has been cooperative in giving him visitation on multiple occasions upon his request in addition to that allotted in the court order.

Although the court "disapprove[d] of" some of the comments Kolbie made about Jami, the court determined those comments did not amount to "a substantial change in circumstances."

The court also addressed the oldest child's behaviors and determined those behaviors "while certainly not appropriate, [were] not a change in circumstances."

The court noted they "predated the parties' divorce" and were not reflective of a change in Kolbie's "parenting style."

On our de novo review, we discern support for the district court's findings. Kolbie's friend testified, "I think [Kolbie's] a very loving mother and she—she works hard to do what she can for the kids." Although she acknowledged "[Kolbie] could do better with discipline," she continued, "when I've been around them and she tries to discipline, they do listen to her." She did not believe it would be good for the children to change the physical care arrangement.

A former neighbor of Kolbie similarly testified the children are "doing well with Kolbie. She's a very responsible person. She's well-organized. She gets them to school on time, to their dental appointments, to the doctor. I think she's doing quite well." He said that, since the divorce, the children were "very loving. They're playful. They appear to be happy."

It is true that a friend of both parents testified Kolbie's behavior toward Jami "changed dramatically and oppositionally" after Jami remarried. She overheard Kolbie make pejorative comments about Jami and his new wife in earshot of the children. She also testified she had concerns about Kolbie's "supervision," and "safety consideration for the children." But it was the district court's prerogative as fact finder to weigh the testimony and assign credibility. *See In re Marriage of Vrban*, 359 N.W.2d 420, 423–24 (Iowa 1984). We agree with the court's conclusion that, although Kolbie engaged in certain inappropriate conduct, she did not undermine Jami's relationship with the children in a manner that amounted to a substantial change of circumstances.

We turn to Jami's contention that Kolbie could not manage the oldest child. Kolbie acknowledged the child could be disrespectful and could be "a challenge." She testified she attempted to address his behaviors by getting him into therapy. In her words, she "dealt with teachers and counselors and therapists to try to get him to where he is today." Both she and Jami's new wife testified the child's behaviors were improving. On our de novo review, we agree with the district court's finding that the child's behaviors were ongoing and did not amount to a substantial change of circumstances.

We affirm the district court's denial of Jami's request to modify the dissolution decree to award him physical care of the children.

## II.    Child Support

The district court increased Jami's child support obligation from $300.00 per month to $547.00 per month. The court reasoned that Jami was voluntarily underemployed as a self-employed carpenter earning $10.00 per hour, when he had been earning "as much as $25.00 per hour" at another job. The court found the underemployment to be "without good cause" and imputed income to him of $12.00 per hour. See Iowa Ct. R. 9.11(4). The court also declined to give Jami a full deduction for a child support obligation arising from another relationship. The court reasoned "that while Jami is ordered to pay $450.00 per month child support for his other two children, he is not current in that payment." Accordingly, the court reduced the deduction to $225.00 per month.

Jami takes issue with both these determinations. At trial, he conceded he was capable of making at least $14.00 per hour and the court imputed two dollars per hour less than that. He also conceded he was a "[l]ittle behind" on his $450.00

child support obligation. On our de novo review, we conclude the district court acted equitably in increasing his child support obligation.

## III. Trial Attorney Fees

The district court ordered Jami to pay $5000.00 toward Kolbie's attorney fee obligation. The court reasoned "Kolbie [was] the prevailing party as to essentially every contested issue herein" and she "incurred attorney fees in the amount of $10,618 in defending this modification action." The court did not abuse its discretion in reaching this conclusion. *See In re Marriage of Francis*, 442 N.W.2d 59, 67 (Iowa 1989).

## IV. Appellate Attorney Fees

Kolbie seeks an award of $5580 in appellate attorney fees. Although she was obligated to defend the appeal, we decline her request in light of the parties' similar annual incomes. *See In re Marriage of Berning*, 745 N.W.2d 90, 94 (Iowa Ct. App. 2007).

**AFFIRMED.**