# IN THE COURT OF APPEALS OF IOWA

No. 24-0099
Filed December 4, 2024

**JOSEPH S. GIPSON, JR.,**
     Plaintiff-Appellee,

**vs.**

**DEENA D. GIBBS,**
     Defendant-Appellant.
_____

     Appeal from the Iowa District Court for Scott County, Patrick A. McElyea,

Judge.

     A mother appeals a ruling modifying a custody arrangement.  **AFFIRMED.**

     M. Leanne Tyler of Tyler & Associates, PC, Bettendorf, for appellant.

     Joseph B. Gipson, Jr., Davenport, self-represented appellee.

     Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**BULLER, Judge.**

Deena Gibbs appeals from a modification ruling placing physical care of her child, J.G., with his father, Joseph Gipson. She challenges the district court's weighing of the evidence and pertinent factors, contests an underlying juvenile-court ruling, and seeks attorney fees. Based largely on the district court's credibility findings and Deena's failure to preserve error on her evidentiary complaints, we affirm.

## I.    Background Facts and Proceedings

J.G. was born to unmarried parents Joseph and Deena in 2018. The next year, Joseph and Deena stipulated to paternity, custody, and visitation. As pertinent here, Deena had physical care of J.G., while Joseph was given a graduated schedule up to standard visitation. They agreed to slightly modify the standard visitation schedule in 2021. And in 2022, Joseph filed the petition for modification seeking physical care that led to this appeal.

Since the time of the original stipulation, Deena pushed repeatedly and unsuccessfully for law enforcement and social-service agencies to find that Joseph physically and sexually abused J.G. In 2022, the Iowa Department of Health of Human Services (HHS) investigated multiple reports of physical and sexual abuse in Joseph's home and concluded they were unfounded; police did not pursue criminal charges after interviewing Joseph and conducting their own investigation. During this time, Joseph voluntarily stopped seeing J.G. for a period of weeks until the investigation concluded. Deena then made additional allegations, some of which seem to allege abuse during times when Joseph did not have access to J.G.

HHS also investigated these allegations and similarly found them not credible, and no criminal charges or abuse findings resulted from a second forensic assessment.

After Deena demanded a third investigation and it also did not result in any charges or founded assessments, Deena and her family told HHS they were going to seek a no-contact order and reach out to the local news stations. Deena also demanded a third forensic interview, which the local child protection center refused "due to concerns of it being unethical and harmful to the child." At some point, Deena called a different child protection center and attempted to persuade them to interview J.G., but HHS denied the referral. In addition to the physical and sexual abuse allegations, Deena or her family members also accused Joseph of smoking marijuana around J.G., but Joseph was drug-tested by HHS and the results were negative for all substances. Another allegation claiming Joseph was involved with abuse against J.G. and two of his girlfriend's children was also unconfirmed, and a criminal investigation of this report did not result in any charges. In the end, every allegation against Joseph was unfounded or unconfirmed.

In contrast, HHS founded an assessment against Deena[1] for denial of critical care and failure to meet J.G.'s emotional needs—specifically inflicting emotional injury on J.G. based on the false reports of abuse, seeking unwarranted medical care, and the resulting trauma to J.G. In a similar vein, the medical director at the child protection center also expressed concerns for Deena's "mental health" and "inability to make rational judgments and decisions about [J.G.]'s emotional

---

[1] The juvenile orders are also critical of Joseph, but the juvenile court found the vast majority of harm inflicted on J.G. flowed from Deena's conduct.

wellbeing." Because of these concerns, the juvenile court ordered that J.G would only be taken to medical appointments when the parents agreed or HHS requested. The juvenile court found Deena violated this order, as well as directives to allow J.G. to speak with the court-appointed guardian ad litem in private.

Deena also filed a petition for relief from sexual abuse under Iowa Code chapter 236A (2022), making essentially the same allegations. The same district judge presided over the 236A proceeding as decided this custody case, and neither party objected to the court taking judicial notice of the file. In its ruling in the 236A case, the district court noted Deena's "suspicious" behavior with regard to the reports of sexual abuse, made a credibility finding adverse to one of Deena's witnesses, and noted the motive to retain custody affected Deena's credibility. The district court denied the petition and dismissed a temporary order of protection after a hearing.

Throughout these assessments, investigations, and hearings, Deena engaged in a number of behaviors that the district court or HHS perceived as potentially contaminating the results. For example, an HHS worker explained to Deena she should not discuss the reported abuse with J.G. (then age three) before J.G. was seen by a forensic interviewer at a child protection center, but she did so anyway. A nurse and forensic interviewer also reported concerns to HHS that J.G. was coached by Deena or her family. Meanwhile, Joseph—while upset about the allegations—was "cooperative" with HHS, compliant with their requests, and "easy to work with." And social-worker and HHS notes reflect that J.G. was calmer and more relaxed when he stayed with Joseph.

The district court also noted broader issues between the parties, finding the parents "have little to no trust between the two of them" and that "neither parent has clean hands" but "Deena has been the source of the majority of the issues." The court observed that the dysfunctional interactions between the parents go beyond the "merely poor communication" attendant to most disputed custody cases. Instead, the district court found there was "a concerted effort by Deena to keep Joseph at arm's length regarding their son." This finding was supported by HHS testimony.

At trial, both parties testified in detail. For his part, Joseph testified that Deena tried to thwart his relationship with J.G. through cutting him out of decision making relating to school, medical and counseling appointments, and generally denying him basic information. He also reiterated his denials of the unfounded allegations regarding physical abuse, sexual abuse, and marijuana use. He opined that Deena made the false reports because "she does not want me involved in [J.G.]'s life." Joseph requested physical care of J.G. and testified he would support J.G.'s relationship with Deena if his request was granted.

Deena testified[2] that she had a nursing degree but was currently unable to work as a nurse because she was on the child abuse registry, arising out of the HHS assessments discussed in this opinion. She told the court that, in addition to

---

[2] During Deena's testimony, her attorney played an audio recording in which Deena surreptitiously recorded her conversation with an HHS worker. This recording was never made part of the record, and the district court indicated it planned to give the recording "minimal weight." Because it was never made part of the record, we give the recording no weight—except to note the fact of recording supports a broader pattern in which Deena secretly made recordings for some ulterior motive.

the necessities, her care for J.G. focused on education and religion. And she emphasized she did not personally report any of the allegations against Joseph but "needed to check into the situation to see what was going on . . . since it was alleged"—so she took J.G. to mandatory reporters, which led to the reports being made under the reporters' names. She criticized Joseph's girlfriend's use of foul language around J.G. And she opined that Joseph (who is Caucasian) was racist against African Americans, even though he dated her (and she is African American) some six months before they conceived J.G.

The district court described significant "issues with Deena's credibility" and expressly "d[id] not find her credible." The court explained its reasoning by highlighting occasions on which Deena made false or misleading statements that were clearly contradicted by the record. And the court documented its first-hand observations that Deena was evasive and "struggled to answer basic questions on cross-examination." The court also condemned Deena's use of surreptitious recording devices to record everyone from HHS workers to J.G. and Joseph. While Deena denied it at trial and blamed her family members, the court found she placed a recording device in J.G.'s shoe before Joseph's court-approved visitation.

The district court found a material and substantial change in circumstances since the custody decree largely based on Deena "[m]aking unfounded and incredible allegations about sexual abuse against [Joseph]," focusing on the resulting "trauma inflicted on the child." As the court noted, and we have recounted, these reports led to three sexual-assault examinations, numerous doctor and hospital visits, and multiple professional interviews of J.G. by law enforcement or multi-disciplinary investigators—which an HHS worker testified

were traumatic. The court found Deena was "working very hard to minimize Joseph's role in their son's life and ensure that she has complete control"—in other words, that the likely motivation for Deena coaching J.G. and making choices that left Joseph out of the loop was because she wanted him out of her and J.G.'s life. Based on this and other evidence, the district court modified the existing custody arrangement and placed J.G. in Joseph's physical care because he was "the *superior* parent from a legal standpoint," with visitation for Deena.

Deena appeals. Joseph initially cross-appealed but never filed a brief, so the supreme court dismissed the cross-appeal and transferred the matter to our court to resolve the contentions presented in Deena's brief.

## II. Standard of Review

We review custody and care decisions de novo. *Thorpe v. Hostetler*, 949 N.W.2d 1, 4 (Iowa Ct. App. 2020). "[W]e examine the entire record and decide anew the issues properly presented." *In re Marriage of Rhinehart*, 704 N.W.2d 677, 680 (Iowa 2005). While we are not bound by the district court's fact-findings, we do give them weight—especially credibility determinations. *Thorpe*, 949 N.W.2d at 5.

## III. Discussion

In reviewing Deena's appellate brief, we discern three clear substantive issues: one concerning the evidence supporting the substantial change in circumstances and change in custody, one concerning juvenile-court rulings, and one concerning attorney fees. We also note a number of other scattered complaints. We address all of these in turn.

### A. Substantial Change in Circumstances

In seeking to disturb the physical-care status quo, Joseph had to prove by a preponderance of the evidence that conditions related to parenting J.G. have materially and substantially changed since the stipulated custody arrangement. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *see also* Iowa Code § 600B.40 (2023) (applying marriage-dissolution custody and visitation provisions to children born out of wedlock). To be material and substantial, changed circumstances must meet three criteria: (1) the court did not contemplate those circumstances when entering the decree; (2) the changes are more or less permanent rather than temporary; and (3) the changed circumstances relate to the welfare of the child. *See Frederici*, 338 N.W.2d at 158. To warrant modification, the parent seeking to change custody bears the burden to prove a superior ability to care for the child. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). "The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons." *Frederici*, 338 N.W.2d at 158.

Deena's argument on appeal is essentially that she thought her testimony was credible and she disagrees with how the district court weighed the pertinent custody factors. The first portion of this claim is a non-starter. This case, even more than most, turns on credibility: whether Deena was acting in good faith or whether instead she waged a manipulative campaign based on false reports to law enforcement and social-services agencies in a bid to eliminate Joseph from J.G.'s life. The district court was in a privileged position to see and hear the parties' testimony first-hand, and we defer to the district court's assessment of the credible

evidence rather than how Deena would prefer we review the disputed questions. *E.g.*, *Thorpe*, 949 N.W.2d at 5. On the second portion, regarding the physical-care determination, we find the district court's credibility determination essentially dispositive: its findings regarding a substantial change are based on its assessment of Deena's motives, and those findings are well supported by the record evidence. We agree with those findings based on our independent review of the cold record, in which Deena's credibility problems are apparent in the black-and-white text of transcripts and reports.

Given Deena's behaviors, including the bad faith and malicious motivation found by the district court, we agree with the district court Joseph met his heavy burden to disturb the status quo and modify the physical-care arrangement. Specifically, we agree with the district court that these circumstances were not contemplated when the decree was entered, they are not merely temporary fluctuations, and they directly affect the welfare of J.G. *See Frederici*, 338 N.W.2d at 158. As the district found, we are convinced the false allegations spurred by Deena and the resulting forensic interviews, sexual assault examinations, and investigations were traumatic for J.G. and negatively affected his emotional well-being—as documented in the founded HHS assessment against Deena. And there is no question the false reports had grave potential to inflict serious and perhaps irreparable harm on Joseph's relationship with J.G., which may have been Deena's goal. The district court described it well: "This situation is more than merely poor communication. This is a concerted effort by Deena to keep Joseph at arm's length regarding their son."

We expressly reject Deena's contention that the district court considered parental alienation to the exclusion of all other factors. J.G.'s welfare was the paramount concern in the district court's orders, as it is in our review on appeal. *See* Iowa R. App. P. 6.904(3)(n). And we, like the district court, find Joseph the superior parent based on the credible record evidence, including but not limited to Deena's serious negative behavior and its impact on J.G.'s welfare now and in the future.

In her appellate brief, Deena also makes scattered complaints about Joseph's housing situation and his girlfriend. The district court rejected these arguments or afforded them little weight—again based in part on credibility findings, which we are loathe to disturb. The court saw no issue with Joseph's housing, nor any issue relating to the girlfriend or her children. We defer to the underlying credibility assessment. And even if we didn't give that deference, we reject Deena's arguments based on our independent review of the record.

Finally on this issue, we make clear our decision should not be construed in any way as criticizing parents who in good faith report their child was physically or sexually abused. A parent who believes their child has been abused should report the matter to law enforcement and social-services agencies without fear that reporting will endanger their custody arrangement. But the district court's explicit credibility findings here make clear that Deena did not prompt these reports in good faith or because she genuinely believed J.G. was abused—instead she intended to use these reports as ammunition in her mission to undermine Joseph's custody claim and ostracize him from J.G.'s life. We hope Deena's behavior is aberrant

and astonishingly rare in our society, and that it does not dissuade any genuine reports or undermine victim services for other families in other cases.

### B. Juvenile-Court-Ruling Exhibits

Deena also asserts the "district court inappropriately relied on the juvenile court adjudication," asserting the underlying juvenile-court rulings contain a legal error. She advances two explanations for how she preserved error in this case: first, she didn't have to preserve error because she is challenging the sufficiency of the evidence; and second, she filed a notice of appeal.

We take Deena's second rationale second first, as it is flat wrong: "[T]he notice of appeal has nothing to do with error preservation." *State v. Lange*, 831 N.W.2d 844, 846–47 (Iowa Ct. App. 2013) (quoting Thomas A. Mayes & Anuradha Vaitheswaran, *Error Preservation in Civil Appeals in Iowa: Perspectives on Present Practice*, 55 Drake L. Rev. 39, 48 (2006)). We also note the recently amended rules of appellate procedure prohibit the parties from relying on the notice of appeal for error preservation. Iowa R. App. P. 6.903(2)(a)(8)(1).

Concerning the first alleged basis for error preservation, we find Deena is not making a challenge to the sufficiency of the evidence *in this case*, but rather some type of evidentiary objection to the validity of the underlying juvenile adjudication. This is best understood as an objection to the district court's consideration of the juvenile rulings which were admitted as exhibits, and that type of objection requires preservation of error. Moreover, it was Deena who offered the rulings into the record, and she consented to judicial notice of the underlying juvenile file. She cannot complain on appeal about evidence she offered below. *State v. Trane*, 984 N.W.2d 429, 435 (Iowa 2023) (finding defendant waived error

on evidence he himself elicited or admitted); *McCracken v. Edward D. Jones & Co.*, 445 N.W.2d 375, 378 (Iowa Ct. App. 1989) ("[I]t is elementary a litigant cannot complain of error which he has invited or to which he has assented."). Because Deena did not object below, and because she waived her claim by offering the very evidence she complains of, there is no claim properly before us, and we summarily affirm on this issue.

## C. Other Issues

We recognize Deena's brief makes scattered other comments that do not raise independent legally cognizable issues, such as complaints about the State or HHS investigation in certain juvenile cases, criticism of the county attorney, vague references to offers of proof, and attempts to backdoor evidence expressly excluded at this trial from other places in the judicially-noticed record. To the extent any issue lurks in these comments, we have considered all issues properly before us, whether expressly referenced in this opinion or not, and we affirm on the merits.

## D. Attorney Fees

Having rejected all of Deena's claims on appeal, we cannot award her attorney fees. *See* Iowa Code § 600B.26 (limiting the award of "reasonable attorney fees" to "the prevailing party").

## IV. Disposition

We affirm the modification ruling, deny Deena's request for appellate attorney fees, and affirm on all other issues raised in her appellate brief. We also assess costs on appeal to Deena.

**AFFIRMED.**