**IN THE COURT OF APPEALS OF IOWA**

No. 24-1149
Filed April 9, 2025

**TAYLOR JOSEPH JOHNSON,**
    Petitioner-Appellee,

**vs.**

**JENNIFER KAY STEELE,**
    Respondent-Appellant.
_____

    Appeal from the Iowa District Court for Webster County, Kurt J. Stoebe, Judge.

    A mother appeals from modification of a custody decree placing physical care of a child with the father. **AFFIRMED.**

    Colin McCormack of Van Cleaf & McCormack Law Firm, LLP, Des Moines, for appellant.

    Dani L. Eisentrager of Eisentrager Law Office, Eagle Grove, for appellee.

    Considered without oral argument by Greer, P.J., and Buller and Langholz, JJ.

**BULLER, Judge.**

Jennifer Steele appeals from a decree modifying custody of a child to place physical care with the father, Taylor Johnson. Jennifer contests whether there was a material and substantial change in circumstances, whether Taylor proved he was a superior caretaker, and the district court's credibility findings. Taylor also requests appellate attorney fees. We affirm and order Jennifer to pay Taylor $1000 for appellate attorney fees.

### I.      Background Facts and Proceedings

The parties were never married but share a child born in 2015. In 2019, the parties were living in north central Iowa and stipulated to joint legal custody, physical care with Jennifer, and visitation for Taylor.

Since the original stipulation, Jennifer moved to the Des Moines metro and—in the district court's words—"[h]er lifestyle became tumultuous." She worked at least six different jobs in four years, from daycare provider to sub-sandwich maker. She, along with the child, lived in multiple residences during this time, including an eviction that led to them living in a hotel for weeks. Jennifer's trial testimony and the child's school records depict somewhat differing accounts of the housing situation. During the same time period, her car was repossessed. Her friend group and relationships were also in flux, characterized by the district court as having "turmoil and instability." As of trial, Jennifer had been living with her new fiancé in an apartment for several months, and she said she was occasionally delivering food for DoorDash but lacked full-time employment, which she attributed in part to a difficult pregnancy.

Jennifer admitted at trial to a history of drug experimentation dating back to "grade school," but claimed she had not used drugs since 2013. The district court found otherwise, concluding "other, more credible evidence demonstrates that [Jennifer] has used methamphetamine throughout adulthood." Jennifer attributed a recent drug screen positive for amphetamines to her anxiety medicine. But she also admitted to medical marijuana use essentially daily, up until a recent pregnancy with another child. And Taylor described erratic behavior by Jennifer he believed indicative of drug use. Although reports were made to the Iowa Department of Health and Human Services (HHS) regarding Jennifer's drug use around the child, none were founded. Despite denying personal drug use, Jennifer agreed she had recently associated and lived with a person that had a "drug history."

The district court found the instability in Jennifer's life had adversely affected the child. School records showed numerous absences and tardies, leading the school district to classify the child with "chronic absenteeism." In the most recent full academic year, the child missed twenty-two-and-a-half days of school and had an additional eight tardies. In the most recent partial year, the child had fifteen-and-a-half absences and thirty-eight tardies. The child was behind in reading, writing, and math, and was placed on an individualized education program (IEP). And the child had problems with hygiene and cleanliness, such as fleas and dirty clothes. Jennifer's estranged sister supplied damning testimony on the conditions inside Jennifer's home, describing human and animal feces on the floor and how Jennifer's parenting deteriorated after the original decree. And Taylor

described as many as five different caretakers assisting Jennifer with childcare in recent years, from new boyfriends to neighbors she hardly knew.

Jennifer's testimony, as summarized by the district court, "minimized" the child's problems and was inconsistent with other witnesses the court found more credible—including Taylor, Taylor's girlfriend and mother, Jennifer's sister, and the father of one of Jennifer's other children. Jennifer also offered a variety of explanations for the child's hygiene issues, including blaming the child's weight; the district court found these explanations "unconvincing and unacceptable." Jennifer blamed the child's "behavioral problems," illness, and the numerous "transitions" in housing for the school-attendance issues. And she testified that, while she was "not always" sober from marijuana while caring for the child, she tried to make sure another adult was there to help. Jennifer's sister contradicted this testimony, describing social-media posts by Jennifer showing drug use around children in a living room.

In contrast to Jennifer, the court found Taylor had stable employment, housing, and relationships. Taylor lived with his girlfriend and their shared son in a house he owned in a small Wright County community. He worked predictable hours and was paid well as a maintenance technician. And his extended family, who the child was bonded to, would be a support.

The court described the parties as "polar opposite homes and parenting," with Taylor offering the safety and stability that Jennifer could not. And the court emphasized that, even if Jennifer addressed some of her instability in the immediate leadup to trial, "she [was] merely at the high point of her cyclical behavior."

The court decreed that it was time for the child "to be off her mother's merry-go-round," found there had been a substantial change in circumstances, placed physical care with Taylor based on his superior ability to parent, and granted Jennifer visitation. Jennifer appeals.

## II.     Standard of Review

"Our review of a modification proceeding is de novo in light of the fact the case was heard in equity." *Christy v. Lenz*, 878 N.W.2d 461, 464 (Iowa Ct. App. 2016). "At the same time, we recognize the virtues inherent in listening to and observing the parties and witnesses." *In re Marriage of Pendergast*, 565 N.W.2d 354, 356 (Iowa Ct. App. 1997). "In equity cases, especially when considering the credibility of witnesses, the appellate court gives weight to the fact-findings of the district court, but is not bound by them." Iowa R. App. P. 6.904(3)(g).

## III.     Discussion

Jennifer contests whether there was a substantial change in circumstances and whether Taylor was a superior parent. But the throughline of her complaints is a fundamental disagreement with the district court's assessment of credibility: she wishes the district court had believed her instead of the other witnesses. But this is no basis for relief on appeal. We are a court for the correction of errors at law, limited to reviewing the cold record of live proceedings below. *See* Iowa Code § 602.5103(1) (2023). We do not see witnesses first-hand, we cannot evaluate demeanor, and we are ill-suited to resolving irreconcilable testimony—like the disagreements between Jennifer and the balance of the witnesses at trial. For these reasons, even when we engage in de novo review, we give the district court's

fact findings "weight and defer especially where the credibility of witnesses is a factor in the outcome." *Hora v. Hora*, 5 N.W.3d 635, 645 (Iowa 2024) (cleaned up). So, while we understand why Jennifer wishes the district court credited her rather than the other witnesses, we are not persuaded to second-guess the credibility findings of a trial court.

In seeking to disturb the physical-care status quo, Taylor had to prove by a preponderance of the evidence that conditions related to parenting the child have materially and substantially changed since the 2019 custody decree. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *Thorpe v. Hostetler*, 949 N.W.2d 1, 5 (Iowa Ct. App. 2020). To be material and substantial, changed circumstances must meet three criteria: (1) the court did not contemplate those circumstances when entering the decree; (2) the changes are essentially permanent; and (3) the changed circumstances relate to the welfare of the child. *See Frederici*, 338 N.W.2d at 158; *Thorpe*, 949 N.W.2d at 5. To warrant modification, the parent seeking to change custody bears the burden to prove a superior ability to care for the child. *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015).

Contrary to Jennifer's claim on appeal, we do not find the district court's finding on the material and substantial change in circumstances to be "vague." It's clear to us the overall issue was Jennifer's instability and deficiencies in parenting, as manifested through the combination of housing, transportation, and employment issues; hygiene problems; poor school attendance; and drug use (whether marijuana, methamphetamine, or both). Although Jennifer has experienced some of these problems throughout her life, the trial testimony paints

a picture of accelerating instability that was not contemplated by the parties at the time of the original stipulated decree. While each individual area of instability might not have warranted modification on its own, the aggregate circumstances satisfied Taylor's heavy burden to prove modification is warranted, as they amount to an essentially permanent material and substantial change in circumstance that affects the welfare of the child.

Having found modification warranted, we consider whether Taylor proved he would be the superior caretaker. We have already listed the deficits in Jennifer's parenting established by the record, and we review these in light of the district court's credibility findings. Many of those same credibility determinations weigh in favor of Taylor, given the contrast the court below drew between his home and parenting and that of Jennifer. We generally agree with these findings. Taylor offers more stable housing, employment, and transportation. There is no evidence he uses drugs or associates with persons who do. And he has no history of hindering the child's educational progress. Our reading of the record also indicates that Taylor has insight into how Jennifer's instability has negatively affected the child—insight Jennifer sorely lacks regarding her own conduct. For these reasons, we agree with the district court that the record established Taylor was a superior caretaker compared to Jennifer.

Last, Taylor seeks appellate attorney fees. Jennifer did not file a reply brief, leaving his request uncontested. We could likely grant Taylor's request on that basis alone. *See In re Marriage of Schuler*, 6 N.W.3d 338, 341 (Iowa Ct. App. 2024). But even if Jennifer had resisted, we would exercise our discretion to order her to pay some amount of Taylor's appellate attorney fees: Taylor prevailed over

all issues appealed, and he was obligated to defend the district court ruling.  *See* Iowa Code § 600B.26.  But we are mindful of Jennifer's somewhat lesser financial means in comparison to Taylor's.  Based on the record regarding her income, we order Jennifer to pay $1000 toward Taylor's appellate attorney fees.

**AFFIRMED.**