# IN THE COURT OF APPEALS OF IOWA

No. 24-1319
Filed April 9, 2025

**EDWARD RAUL ROJAS PENA,**
　　Plaintiff-Appellee,

**vs.**

**JUDITH JACKELYN FARIA BRICENO,**
　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Dallas County, Elisabeth Reynoldson, Judge.

Judith Faria Briceno appeals the district court's denial of her petition to modify the physical care provision of the decree dissolving her marriage to Edward Rojas Pena. **AFFIRMED.**

Andrew B. Howie of Shindler, Anderson, Goplerud & Weese, P.C., West Des Moines, for appellant.

Jane M. Brennan of Baer Law Office, Des Moines, for appellee.

Considered without oral argument by Tabor, C.J., and Schumacher and Chicchelly, JJ.

**SCHUMACHER, Judge.**

Judith Faria Briceno appeals the district court's denial of her petition to modify the physical care provision of the decree dissolving her marriage to Edward Rojas Pena. Upon our review, we conclude Judith failed to prove a substantial and material change in circumstances. We affirm the district court's order.

## I.      Background Facts and Proceedings

Judith and Edward married in 2013. They have one daughter, A.R., who was born in 2017. During the marriage, the parties lived in Venezuela, New Jersey, and Virginia. Edward petitioned for dissolution of marriage in 2021. The parties entered a settlement agreement resolving all property, custody, and physical care issues, which was approved and adopted by a Virginia district court in July 2022. The agreement provided in part:

> The parties agree that they shall have joint legal custody of [A.R.]. The parties agree that while both are residing in Charlottesville, Virginia, they shall share physical custody. The parties acknowledge that Father is relocating to Iowa in June 2022 and Mother is relocating to Louisiana in June 2022. The parties agree that after each relocates the custody schedule shall be as follows: during the school year [A.R.] shall reside with Father and during the summer when school is not in session [A.R.] shall reside with Mother. Mother's custodial time with the child during summers shall begin the day immediately following the conclusion of [A.R.]'s school year and Father's custodial time shall begin one week prior to the first day of school for [A.R.], Mother shall also have the following holiday time in the event she relocates outside of Iowa: Thanksgiving break in odd-numbered years and Christmas break in even numbered years, Father shall have [A.R.] for Thanksgiving break in even-numbered years and Christmas break in odd numbered years. So long as it does not interfere with her schooling, Mother shall have [A.R.] for every Mother's Day and Father shall have [A.R.] for every Father's Day. Mother may also exercise such additional parenting time and holiday time with [A.R.] if she elects to travel to Iowa and gives Father reasonable advance notice, Father will not unreasonably deny Mother any parenting time for any such scheduled visits. . . .The parties agree to revisit this schedule after twenty-four (24) months

time to determine if this schedule remains in [A.R.]'s best interests or to determine if a new schedule is appropriate.

The parties agreed to "waive any child support obligation at this time and each shall provide for the minor child's needs during their custodial parenting time."

After their divorce was finalized, the parties relocated as contemplated in their agreement—Edward to Iowa, and Judith to Louisiana. In August 2022, A.R. began kindergarten at St. Anthony's Catholic School in Des Moines.

In February 2023, Edward petitioned to register the foreign child custody decree in Iowa. In September, Judith petitioned for modification requesting physical care of A.R. As the basis for her petition, Judith alleged Edward "refuses to properly communicate," "does not follow the terms and conditions of the decree," "actively attempts to interfere with the relationship between [Judith] and the child," "continually undermines [Judith]'s parenting role," and "continually refuses to allow [Judith] parenting time with the child." Edward filed an answer denying Judith's claims and requested that the court deny her petition.

Since the divorce, Edward has lived in West Des Moines. His father and stepmother reside with him. Edward is a cardiologist earning $475,000 per year. He generally works 8:15 a.m. to 3:00 p.m., Monday through Friday, with longer hours two Wednesdays each month. A.R. is in second grade at St. Anthony's, where she attends a Spanish immersion program. A.R.'s morning classes are with a Spanish-speaking teacher, and in the afternoon, she attends classes with an English-speaking teacher. A.R. speaks Spanish in both her parents' homes, and she needed English-learning services when she began school. Edward worked with A.R.'s teachers to help A.R. progress to meet grade level. Edward's clinic is

minutes away from A.R.'s school.  His work hours allow him to take A.R. to and from school all but two days a month when A.R.'s grandfather or her grandfather's wife assist in transportation.  A.R. is active in gymnastics, social activities, and she plays piano.  She is described as happy, active, and well-adjusted.

In June 2024, Judith moved from Louisiana to Florida, where she lives with her father.  Judith is an endocrinologist earning $250,000 per year.  She works 8:30 a.m. to 5:00 p.m., Monday through Friday.  Her fiancé, Suraj, lives in Louisiana but plans to join Judith in Florida "in the next year."  Judith believed it was in A.R.'s best interest to be with Edward while she was busy "finishing [her] fellowship" in Louisiana.  But now that her fellowship is complete and she obtained employment at a clinic in Florida, she believes a new physical care schedule is appropriate.

The trial took place over two days in July.  After hearing the testimony from Judith, Edward, Judith's father, A.R.'s teacher, and Suraj, the district court denied Judith's petition.  The court found Judith failed to show "there has been a change of circumstance showing the needs of this child are not being met" since the 2022 decree.  The court further found Judith had not "demonstrated that she can administer to the well-being of the parties' daughter more effectively than Edward."  The court modified the decree, however, to provide more direction concerning transportation expenses for visitation and A.R.'s passport.  The court also ordered Judith to pay child support.  Judith appeals.

## II.    Scope and Standard of Review

"We review modifications of dissolution decrees de novo."  *In re Marriage of Kisting*, 6 N.W.3d 326, 332 (Iowa Ct. App. 2024).  While they are not binding,

we give weight to the district court's findings of fact, especially on credibility determinations. *Id.* "This is because the trial court has a firsthand opportunity to hear the evidence and view the witnesses." *In re Marriage of Brown*, 778 N.W.2d 47, 50 (Iowa Ct. App. 2009). In cases such as these, our overriding consideration is the best interests of the child. Iowa R. App. P. 6.904(3)(n).

### III.    Modification of Physical Care

Judith, as the parent seeking modification, bears the burden of proving by a preponderance of the evidence that (1) "conditions since the decree was entered have so materially and substantially changed" that A.R.'s "best interests make it expedient to make the requested change"; and (2) she has a superior ability to care for A.R. *See In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983); *In re Marriage of Hoffman*, 867 N.W.2d 26, 32 (Iowa 2015). To be material and substantial, changed circumstances must "not have been contemplated by the court when the decree was entered"; must "be more or less permanent, not temporary"; and must "relate to the welfare of the child[]." *Frederici*, 338 N.W.2d at 158.

The district court found no material and substantial change relating to A.R.'s welfare.[1] The court observed Edward had relocated to Iowa with A.R. and Judith

---

[1] Judith contends the district court's decision "is ambiguous as to which legal standard it applied to determine whether to grant Judith's request to modify the physical care provisions of an existing custody order." We disagree. As noted above, Judith's petition alleged "there has been a material and substantial change of circumstances, not contemplated at the time of the entry of the Decree and Separation Agreement, sufficient to warrant modification of the decree and grant Judith primary physical care of the minor child." And at the outset of its order, the district court noted:

> The question for the Court is whether there has been a
> substantial and material change in circumstances justifying a

had moved to Louisiana "as contemplated" by the dissolution decree. Judith recently relocated to Florida. In terms of proximity to A.R., her home is now farther away. Regardless, the distance between the parties continues to require either a flight or a long car trip for exchanges. Judith described Edward as being "inflexible" with her ability to spend time with A.R., providing an example in late August 2022, when her family from Venezuela came to Louisiana to visit. But Judith acknowledged Edward's reasoning was because A.R. was just starting kindergarten and she "cannot [miss] classes."

Relating to the parties' communication, the record does not support Judith's claim that the parties are unable to communicate effectively. As the court noted, "there appears to be continued acrimony between the parties," but they have been able to make decisions relating to A.R.'s school, therapy, and extracurricular activities that have allowed A.R. to thrive. Edward testified he kept Judith updated about school and conferences and provides A.R.'s teachers with Judith's email and phone number. He agreed A.R.'s "[p]erformance in school" is "important for her to know." Judith testified she participates in gymnastics with A.R., and she supported Edward's idea to have the child begin piano lessons. Although Judith initially equivocated on whether A.R. needed therapy, Edward researched different

---

modification of the dissolution decree. When considering whether to grant a modification, the party seeking the change must establish, by a preponderance of the evidence, a material and substantial change in circumstance since the decree that was not contemplated by the court when the decree was entered, that it is more or less permanent, and that relates to the welfare of the child.

See *Frederici*, 338 N.W.2d at 158. As noted below, because the district court found no change in circumstances—a finding we affirm on appeal—we need not address Judith's claim related to superior parenting.

types of child therapy and felt play therapy would be "very good" for the child. Although Edward admitted he should have informed Judith that the play therapist was available and "a good fit" for A.R. before the therapist contacted Judith, Judith began communicating with the therapist and agreed A.R. should continue therapy.

Judith also took issue with her ability to communicate with A.R. when A.R. is in Edward's care. Edward acknowledged that his father, in general, did not answer the phone. That said, it seems this issue has been resolved for the most part. Edward purchased an iPad for A.R. to use to communicate with the parties. Judith agreed she talked to the child twice daily—on the way to school and before bed. And Judith also admitted she has prevented Edward's communication with A.R. at times when A.R. was in her care. For example, Judith testified the iPad was "turned off" after a dispute she had with Edward relating to A.R.'s passport that she wanted to address with Edward: "I was expecting him to call me to tell her to turn on the iPad. In that situation I will be able to talk [to] him about the passport." Although Judith complained Edward used to monitor her calls with A.R., she acknowledged that is "no longer the case." In short, Judith has not established these circumstances make it expedient to make her requested change in physical care.

As the district court found:

> The testimony from all the witnesses was that both parents love their daughter and that both provide good care. The Court simply cannot find that there has been a change of circumstance showing the needs of this child are not being met. As explained above, Judith bears a heavy burden to seek to modify the physical care arrangement. The parties have been parenting according to the current schedule since approximately June 2022. During that time, they have been able to address most issues in the parenting of their daughter. The challenges they have faced are not the type that

indicate a substantial change in circumstances, and they certainly were not outside of the knowledge or contemplation of the parties or the court when the agreement and prior decree were entered.  In addition, the Court cannot find that Judith has demonstrated that she can administer to the well-being of the parties' daughter more effectively than Edward.  For these reasons, the Court denies Judith's request that she be awarded primary physical care of [A.R.]

"The heavy burden upon a party seeking to modify custody stems from the principle that once custody of children has been fixed it should be disturbed only for the most cogent reasons."  *Id.*  We concur with the district court's finding that there was no cogent reason to disturb the physical care arrangement here. Because we find no substantial or material change in circumstances, the district court correctly denied Judith's petition, and we need not consider Judith's claim that she "is the better parent" or her request that we revisit the child support obligation.  We affirm.

**AFFIRMED.**